UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| V.J.,<br><br>Plaintiff,<br><br>v.<br><br>611 DEGRAW LLC d/b/a UNION HOTEL, GREENWICH STREET EQUITIES LTD. d/b/a UNION HOTEL, d/b/a GOWANUS INN AND YARD, and 645-651 UNION INVESTOR, LLC d/b/a GOWANUS INN AND YARD,<br><br>Defendants. | Case No. 1:25-cv-02927-OEM-JAM |

**PLAINTIFF V.J.'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT 611 DEGRAW LLC d/b/a UNION HOTEL'S MOTION TO DISMISS THE FIRST AMENDED COMPLAINT**

# TABLE OF CONTENTS


**Page**

**I. PRELIMINARY STATEMENT** .......... 1

**II. PROCEDURAL HISTORY** .......... 2

**III. STATEMENT OF FACTS** .......... 2

**IV. LEGAL STANDARD** .......... 4

**V. ARGUMENT** .......... 5

**a. THE FAC STATES A BENEFICIARY CLAIM AGAINST 611 DEGRAW UNDER 18 U.S.C. § 1595(a).** .......... 5

**i. The FAC Plausibly Alleges That 611 Degraw Participated in a Venture With Plaintiff's Traffickers.** .......... 5

***1. Mueller asks whether the defendant took part in a common undertaking, considering all of the facts.*** .......... 6

***2. The FAC alleges conduct far beyond an arm's-length room rental.*** .......... 7

***3. 611 Degraw's counterarguments fail.*** .......... 9

**ii. The FAC Plausibly Alleges That 611 Degraw Knew or Should Have Known That the Venture Was Trafficking Plaintiff.** .......... 13

***1. Section 1595(a) requires only that 611 Degraw should have known of the venture's violations.*** .......... 13

***2. 611 Degraw's staff observed signs that Plaintiff was being trafficked by force and coercion.*** .......... 14

***3. 611 Degraw's authorities involve general awareness or the absence of any sign of coercion.*** .......... 15

**b. THE FAC STATES A CLAIM UNDER NEW YORK SOCIAL SERVICES LAW § 483-bb(c).** .......... 16

**c. THE FAC GIVES 611 DEGRAW FAIR NOTICE UNDER RULE 8.** .......... 17

**d. 611 DEGRAW'S REMAINING ARGUMENTS PROVIDE NO BASIS FOR DISMISSAL.** .......... 19

**e. ALTERNATIVELY, PLAINTIFF SHOULD BE GRANTED LEAVE TO AMEND.** .......... 20

**VI. CONCLUSION** .......... 20

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*A.A. v. Omnicom Grp., Inc.*, 834 F. Supp. 3d 419 (S.D.N.Y. 2026)....16

*A.G. v. Northbrook Indus., Inc.*, 171 F.4th 1257 (11th Cir. 2026)....12

*Anderson News, L.L.C. v. Am. Media, Inc.*, 680 F.3d 162 (2d Cir. 2012)....4

*Apollo Fuel Oil v. United States*, 195 F.3d 74 (2d Cir. 1999)....10

*Arista Records, LLC v. Doe 3*, 604 F.3d 110 (2d Cir. 2010)....4, 10, 18

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009)....4

*Atuahene v. City of Hartford*, 10 F. App'x 33 (2d Cir. 2001)....19

*Bais Yaakov of Spring Valley v. Educ. Testing Serv.*, 251 F. Supp. 3d 724 (S.D.N.Y. 2017)....18

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)....4

*Chambers v. Time Warner, Inc.*, 282 F.3d 147 (2d Cir. 2002)....4, 19

*Chang v. Shen Yun Performing Arts, Inc.*, No. 7:24-cv-08980 (PMH), 2026 U.S. Dist. LEXIS 187973 (S.D.N.Y. Aug. 18, 2026)....6, 7, 11

*Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42 (2d Cir. 1991)....20

*Doe (G.N.C.) v. Uniquest Hosp., LLC*, No. 23-cv-7980 (PKC), 2024 U.S. Dist. LEXIS 163319 (S.D.N.Y. Sept. 11, 2024)....13, 14, 15, 19

*Doe (J.L.K.) v. Choice Hotels Int'l, Inc.*, No. 1:25-cv-00435-DCN, 2026 U.S. Dist. LEXIS 193450 (D. Idaho Aug. 25, 2026)....8, 15, 16

*Doe (L.M.) v. 42 Hotel Raleigh, LLC*, 717 F. Supp. 3d 464 (E.D.N.C. 2024)....16

*Doe (L.M.) v. 42 Hotel Raleigh, LLC*, No. 5:23-CV-235-FL, 2024 U.S. Dist. LEXIS 165863 (E.D.N.C. Sept. 16, 2024)....16

*Doe (O.B.J.) v. Inter-Continental Hotels Grp., Inc.*, No. 25-cv-10815 (LAK), 2026 U.S. Dist. LEXIS 227125 (S.D.N.Y. Oct. 2, 2026)....7, 8, 9, 10, 12

*Doe 1 v. Deutsche Bank Aktiengesellschaft*, 671 F. Supp. 3d 387 (S.D.N.Y. 2023)....8

*Doe v. Red Roof Inns, Inc.*, 21 F.4th 714 (11th Cir. 2021)....13

*Does 1-4 v. Red Roof Inns, Inc.*, 688 F. Supp. 3d 1247 (N.D. Ga. 2023)....8

*G.G. v. Salesforce.com, Inc.*, 76 F.4th 544 (7th Cir. 2023) .......... 12

*Girden v. Sandals Int'l, Ltd.*, 206 F. Supp. 2d 605 (S.D.N.Y. 2002) .......... 10

*Global-Tech Appliances, Inc. v. SEB S.A.*, 563 U.S. 754 (2011) .......... 14

*K.H. v. Riti, Inc.*, 2024 U.S. App. LEXIS 3127 (11th Cir. Feb. 9, 2024) .......... 12

*K.O. v. G6 Hosp., LLC*, 728 F. Supp. 3d 624 (E.D. Mich. 2024) .......... 15

*Kolari v. N.Y.-Presbyterian Hosp.*, 455 F.3d 118 (2d Cir. 2006) .......... 17

*Lawson v. Rubin*, No. 17-cv-6404 (BMC), 2018 U.S. Dist. LEXIS 71582 (E.D.N.Y. Apr. 29, 2018) .......... 11, 12

*Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC*, 797 F.3d 160 (2d Cir. 2015) .......... 20

*Molchonova v. FirstBank P.R.*, No. 1:26-cv-05327 (JSR), 2026 U.S. Dist. LEXIS 236836 (S.D.N.Y. Oct. 14, 2026) .......... 6, 7, 9

*Mueller v. Deutsche Bank Aktiengesellschaft*, 185 F.4th 307 (2d Cir. 2026) .. 1, 2, 5, 6, 7, 8, 9, 11, 13, 20

*N.Y. Marine & Gen. Ins. Co. v. Tradeline (L.L.C.)*, 266 F.3d 112 (2d Cir. 2001) .......... 10, 14

*Noble v. Weinstein*, 335 F. Supp. 3d 504 (S.D.N.Y. 2018) .......... 11, 13

*Ricchio v. McLean*, 853 F.3d 553 (1st Cir. 2017) .......... 8

*Rice v. Smithtown Volkswagen*, 321 F. Supp. 3d 375 (E.D.N.Y. 2018) .......... 4

*Ritchie v. N. Leasing Sys., Inc.*, 14 F. Supp. 3d 229 (S.D.N.Y. 2014) .......... 18

*Riviello v. Waldron*, 47 N.Y.2d 297 (1979) .......... 10

*S.J. v. Choice Hotels Int'l, Inc.*, 473 F. Supp. 3d 147 (E.D.N.Y. 2020) .......... 13, 15

*Salahuddin v. Cuomo*, 861 F.2d 40 (2d Cir. 1988) .......... 18

*Shahriar v. Smith & Wollensky Rest. Grp., Inc.*, 659 F.3d 234 (2d Cir. 2011) .......... 17

*Twitter, Inc. v. Taamneh*, 598 U.S. 471 (2023) .......... 12

*Wynder v. McMahon*, 360 F.3d 73 (2d Cir. 2004) .......... 18, 19

**Statutes**

18 U.S.C. § 1591 .......... 5, 6, 11, 16

18 U.S.C. § 1595 .......... 1, 2, 6, 7, 11, 12, 13, 14, 16, 19

18 U.S.C. § 2333(d)(2) .......... 12

28 U.S.C. § 1367(c)(3) .......... 17

N.Y. Penal Law § 230.34 .......... 17

N.Y. Soc. Serv. Law § 483-bb(c) .......... 2, 16, 17

**Rules**

Fed. R. Civ. P. 12(b)(6) .......... 2, 4, 18

Fed. R. Civ. P. 15(a)(2) .......... 20

Fed. R. Civ. P. 8 .......... 2, 17, 18

## I. PRELIMINARY STATEMENT

Plaintiff V.J. was sex trafficked at the Union Hotel, 611 Degraw Street, Brooklyn. Defendant 611 Degraw LLC d/b/a Union Hotel ("611 Degraw") owned and operated it. First Am. Compl. ("FAC") ¶¶ 9, 16, ECF No. 14. Plaintiff's trafficker was sentenced in 2023 to 21 years in federal prison for sex trafficking multiple victims by force, fraud, and coercion. *Id.* ¶¶ 17, 21-22. The FAC alleges how the trafficker directed others to aid in his trafficking, so this memorandum will describe the acts of multiple traffickers, even though only one trafficker is alleged to have been criminally convicted in the FAC. *Id.* at ¶¶ 17, 19, 21-22, 66(c)(d)(e)&(f), 68 (describing how plaintiff was forced to engage in commercial sex repeatedly with sex buyers, suspicious individuals would loiter, the traffickers would monitor the halls, and the trafficker would have another shadow Plaintiff). 611 Degraw asks the Court to treat it as a hotel that merely rented a room to a stranger. *See* Def.'s Mem. of Law in Supp. of Mot. to Dismiss ("Def. Mem.") at 1-2, 9-11. The FAC alleges much more. Plaintiff's traffickers influenced 611 Degraw's staff to act as lookouts and to warn of police. FAC ¶¶ 35(d), 56, 70(d). The traffickers renewed the room every day and paid with the proceeds of Plaintiff's trafficking. *Id.* ¶¶ 53, 62. The traffickers and the hotel revived prior dealings for profit. *Id.* ¶ 64. And the hotel kept doing business with the traffickers while its staff watched Plaintiff walk the property bruised, saw the traffickers abuse and control her, and heard her screaming. *Id.* ¶¶ 66(b), (j)-(k), 67-69.

Defendant's Motion to Dismiss should be denied. *First*, the FAC states a beneficiary claim under 18 U.S.C. § 1595(a). Under *Mueller v. Deutsche Bank Aktiengesellschaft*, 185 F.4th 307 (2d Cir. 2026), the question is whether the defendant took part in a common undertaking with the venture. Paid police lookouts are no arm's-length service. A post-*Mueller* decision dismissing claims against hotel operators named that very allegation as one that could establish participation. And the FAC pleads constructive knowledge through what 611 Degraw's own employees saw and

heard. *Second*, the § 483-bb(c) claim survives. 611 Degraw challenges only knowledge, which is pleaded, and the statute does not require participation in a venture. *Third*, the FAC gives fair notice under Rule 8. It identifies 611 Degraw, its role, and its hotel by street address. 611 Degraw had no trouble briefing every element. If the Court finds any deficiency, it should grant leave to amend, particularly because *Mueller* came down more than a year after the FAC was filed.

## II. PROCEDURAL HISTORY

Plaintiff filed this action on May 27, 2025, and filed the FAC on July 18, 2025, naming 611 Degraw, Greenwich Street Equities Ltd. ("Greenwich"), and 645-651 Union Investor, LLC ("Gowanus"). FAC at 1.[1] The FAC asserts a beneficiary claim under the Trafficking Victims Protection Reauthorization Act ("TVPRA"), 18 U.S.C. § 1595(a) (Count I), and a claim under the New York Social Services Law § 483-bb(c) (Count II). FAC ¶¶ 42-83. 611 Degraw served on Plaintiff its motion to dismiss under Rules 8 and 12(b)(6) on September 16, 2026. Def. Mem. at 19. Plaintiff submits this memorandum in opposition in accordance with the briefing schedule set by the Court. Oct. 15, 2026 Dkt Entry.

## III. STATEMENT OF FACTS

**611 Degraw and the Union Hotel.** 611 Degraw owned and operated the Union Hotel at 611 Degraw Street, Brooklyn, and was responsible for it while Plaintiff was trafficked there. FAC ¶ 9. As owner and operator, 611 Degraw controlled the hotel's training, policies, and anti-trafficking practices. *Id.* ¶ 25. It could also refuse or eject guests who used rooms for unlawful purposes, brought in unregistered visitors, or appeared impaired. *Id.* ¶ 72.

---

[1] Defendants Greenwich and Gowanus have not filed a motion to dismiss. But Greenwich operated and managed both the Union Hotel and the Gowanus Inn and Yard at 651 Union Street. *Id.* ¶ 10. Gowanus also owned and operated the Gowanus Inn and Yard at 651 Union Street. *Id.* ¶ 11.

**Plaintiff's trafficking.** Plaintiff does not attempt to "conjure" "horror" "with allusions to human sex trafficking." Def. Mem. At 1. Plaintiff was violently and brutally sex trafficked. That horror was her life. In 2016, Plaintiff was sex trafficked at the Union Hotel and the Gowanus Inn and Yard by her traffickers. *Id.* ¶¶ 16-17. The traffickers threatened Plaintiff's family, issued verbal threats, and coerced her with drugs and alcohol. *Id.* ¶ 18. The traffickers physically and verbally abused her, instilled in her a fear of severe bodily injury or death, used psychological coercion, and withheld her identification documents. *Id.* ¶ 49. She was forced to stay in a room at each hotel with other girls and to perform sex acts on the men who came into the room. *Id.* ¶¶ 19-20. One of Plaintiff's traffickers was later charged with, and in 2023 sentenced to 21 years in prison for, sex trafficking multiple victims by force, fraud, and coercion. *Id.* ¶¶ 21-22.

**611 Degraw's staff and the traffickers.** While Plaintiff was trafficked at the hotel, her traffickers paid, befriended, or compensated hotel staff "to act as lookout(s)/informant(s) for Plaintiff's trafficker(s), while acting in their scope of employment, so as to inform the trafficker(s) of police activity." *Id.* ¶ 56; *see also id.* ¶¶ 35(d), 70(d). The traffickers renewed the room daily. *Id.* ¶ 62. They paid for it with "proceeds derived from the sex trafficking occurring on the subject premises." *Id.* ¶ 53. And they "had prior commercial dealings with the subject hotels which the trafficker(s) and Defendants wished to reinstate for profit." *Id.* ¶ 64; *see also id.* ¶¶ 35(a), (c), 63.

**What 611 Degraw's staff saw and heard.** Plaintiff interacted with hotel staff, whom she could identify by uniform, name tag, logo, or presence in employee-only areas. *Id.* ¶¶ 68-69. Staff saw Plaintiff, her traffickers, and a steady procession of sex buyers going in and out of the room. *Id.* ¶ 68. They saw Plaintiff's visible bruising and physical deterioration. *Id.* ¶¶ 66(k), 67. They saw or heard Plaintiff's traffickers physically and verbally abuse her, and overtly control her, in common areas. *Id.* ¶¶ 66(j)-(k), 67. They heard screaming from her room loud enough to carry

outside it. *Id.* ¶ 66(k). They saw traffickers monitoring the hallway and door and shadowing Plaintiff. *Id.* ¶¶ 66(e)-(f), 67. Housekeeping saw cash, drugs, condoms, and groups of people in the room. *Id.* ¶ 66(d). And staff likely saw Plaintiff soliciting buyers on the premises at her traffickers' direction. *Id.* ¶ 66(g).

**611 Degraw's benefit.** 611 Degraw received payment for the rooms used to traffic Plaintiff, as well as revenue from the Wi-Fi service through which her traffickers advertised her. *Id.* ¶¶ 50, 53-54.

## IV. LEGAL STANDARD

To survive a Rule 12(b)(6) motion, a complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The Court "must accept the factual allegations set forth in the complaint as true and draw all reasonable inferences in favor of the Plaintiff." *Rice v. Smithtown Volkswagen*, 321 F. Supp. 3d 375, 382 (E.D.N.Y. 2018). "The choice between two plausible inferences that may be drawn from factual allegations is not a choice to be made by the court on a Rule 12(b)(6) motion." *Anderson News, L.L.C. v. Am. Media, Inc.*, 680 F.3d 162, 185 (2d Cir. 2012). And *Twombly* does not prevent a plaintiff from pleading facts on information and belief "where the facts are peculiarly within the possession and control of the defendant." *Arista Records, LLC v. Doe 3*, 604 F.3d 110, 120 (2d Cir. 2010) (citation omitted). Finally, the Court's review is confined to the complaint and documents it incorporates; matters outside the pleadings may not be considered without converting the motion to one for summary judgment. *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152-53 (2d Cir. 2002).

## V. ARGUMENT

### a. THE FAC STATES A BENEFICIARY CLAIM AGAINST 611 DEGRAW UNDER 18 U.S.C. § 1595(a).

611 Degraw challenges two elements: participation in a venture and knowledge. Def. Mem. at 5-15.[2] Both challenged elements are well pleaded. The FAC alleges a relationship between 611 Degraw and Plaintiff's traffickers that went far beyond an arm's-length rental. And it alleges that 611 Degraw's own staff saw the force and coercion the traffickers used on Plaintiff.

The Second Circuit has set out the elements of a beneficiary claim:

> [A] plaintiff must plausibly allege that: (i) he is the victim of an underlying violation of the statute; (ii) the defendant participated in the venture that carried out the violation and caused the victim's injury; (iii) the defendant knew or should have known that the venture had engaged in an act that violated the statute; and (iv) the defendant knowingly benefitted from, attempted to benefit from, or conspired to benefit from its participation in the venture financially or by receiving anything of value.

*Mueller*, 185 F.4th at 312. Only the second and third elements are in dispute.

#### i. The FAC Plausibly Alleges That 611 Degraw Participated in a Venture With Plaintiff's Traffickers.

611 Degraw contends that, under *Mueller*, it was a "passive service provider" that did nothing more than rent a room to Plaintiff's traffickers, and that the FAC's lookout allegations are conclusory and cannot be imputed to it. Def. Mem. at 6-11. Those arguments ignore what the FAC alleges. As shown below, *Mueller* calls for a fact-specific inquiry into whether the defendant took part in a common undertaking. The FAC alleges the very kind of fact that another post-*Mueller* hotel decision identified as one that could establish participation: hotel staff working with the trafficker as police lookouts. It also alleges a continuous relationship of daily renewals paid with

[2] It does not dispute that Plaintiff is a victim of a § 1591 violation or that it knowingly benefited from the room rentals. Def. Mem. At 6. These are pleaded. FAC ¶¶ 17-22, 49-50, 53-54.

trafficking proceeds, and prior dealings that the traffickers and the hotel wished to reinstate for profit.

#### *1. Mueller asks whether the defendant took part in a common undertaking, considering all of the facts.*

*Mueller* holds that "participation in a venture" under § 1595(a) requires "a showing that the defendant took part in an enterprise or undertaking that involved elements of risk, potential gain, or both." 185 F.4th at 313. Courts weigh, among other things:

> whether the defendant owned an interest in the venture; whether the defendant acted with the purpose or desire to promote the venture's success; whether the defendant and the venture otherwise acted with a common purpose; whether the defendant maintained a continuous relationship with the venture; whether the defendant exercised control over the venture's operations; and whether the defendant's association with the venture went beyond a mere arm's-length transaction.

*Id.* at 314. These factors are guides, not elements. "[E]ach case will ultimately turn on its own facts." *Id.*; *accord Molchonova v. FirstBank P.R.*, No. 1:26-cv-05327 (JSR), 2026 U.S. Dist. LEXIS 236836 at 11 (S.D.N.Y. Oct. 14, 2026) ("[T]hese factors are not exhaustive . . . ."). *Mueller* also refused to import the criminal definitions of § 1591(e) into the civil remedy. 185 F.4th at 313.

The *Mueller* complaint alleged "little more than an arm's-length business relationship between a bank and its customers, as well as the routine provision of ordinary, nondifferentiated financial services." *Id.* at 314. There was "no indication" that the bank "provided specialized services to individuals involved in the schemes, or that Deutsche Bank and the fraudsters acted with a common purpose." *Id.* Its "interest was limited to collecting fees for providing the same kinds of financial services that it would to any other customer." *Id.* at 315. When a defendant does more, the claim survives.

In *Chang v. Shen Yun Performing Arts, Inc.*, a forced-labor case, the court sustained a beneficiary claim against a bank. "[U]nlike in *Mueller*," the bank there had done "much more than simply 'provid[e] financial services at arm's length'" in conducting its relationship with the

venture. No. 7:24-cv-08980 (PMH), 2026 U.S. Dist. LEXIS 187973 at *35 (S.D.N.Y. Aug. 18, 2026). It "provided 'specialized services,' 'acted with a common purpose,' and 'exercised operational control.'" *Id.* In *Molchonova*, the court also denied dismissal because "the gravamen of the complaint is precisely that [the bank] interacted with Epstein quite a bit more, and in very different ways, than it did for other customers." 2026 U.S. Dist. LEXIS 236836, at *14 (S.D.N.Y. Oct. 14, 2026).

In *Doe (O.B.J.) v. Inter-Continental Hotels Group, Inc.*, the court evaluated a Section 1595 claim in the hotel sex-trafficking context. That court dismissed claims against hotel operators under *Mueller* when their only alleged interaction with the trafficker was "the routine provision of ordinary, nondifferentiated" hotel services. No. 25-cv-10815 (LAK), 2026 U.S. Dist. LEXIS 227125, at 14 (S.D.N.Y. Oct. 2, 2026). But the court was explicit about what would suffice:

> Allegations, for example, that agents of the hotel worked directly with traffickers by serving as lookouts for the police, otherwise maintained personal relationships with a trafficker, designated a certain area of the hotel for a trafficker to use, expressly formed a partnership with a trafficker, or provided tailored services or special benefits to a trafficker are the types of allegations that could show or at least plausibly suggest that a hotel and a trafficker engaged in a shared enterprise or common undertaking.

*Id.* at 20 (footnotes omitted). Plaintiff's allegations here are in line with what the *O.B.J.* court stated would suffice.

#### 2. *The FAC alleges conduct far beyond an arm's-length room rental.*

*Staff served as the traffickers' paid lookouts and informants.* The traffickers paid, befriended, or compensated 611 Degraw's employees to serve as their lookouts and informants and to warn them of police activity. FAC ¶¶ 35(d), 56, 70(d). 611 Degraw's employees did this within the scope of their employment. *Id.* ¶ 56. That allegation goes to the heart of *Mueller*. Warning traffickers that police are coming is not a "nondifferentiated" service offered to "any

other customer." 185 F.4th at 314-15. No ordinary guest receives this service. Its only purpose is to shield the venture from detection and keep it running on the premises. It shows a "common purpose" and a "purpose or desire to promote the venture's success." *Id.* at 314. It goes far "beyond a mere arm's-length transaction." *Id.* And it is the first example *O.B.J.* gave of allegations that "could show or at least plausibly suggest" participation. 2026 U.S. Dist. LEXIS 227125, at *20. Even before *Mueller*, courts held that helping a trafficker evade law enforcement goes "well beyond merely providing [one's] usual services." *Doe 1 v. Deutsche Bank Aktiengesellschaft*, 671 F. Supp. 3d 387, 406 (S.D.N.Y. 2023) (bank allegedly "structured" cash withdrawals to avoid alerting authorities). Courts in hotel cases draw the same line. *See Doe (J.L.K.) v. Choice Hotels Int'l, Inc.*, No. 1:25-cv-00435-DCN, 2026 U.S. Dist. LEXIS 193450, at *11 n.5 (D. Idaho Aug. 25, 2026), (distinguishing *Does 1-4 v. Red Roof Inns, Inc.*, 688 F. Supp. 3d 1247, 1253-54 (N.D. Ga. 2023), where "employees played the role of lookout and notified traffickers when police were nearby").

*A continuous relationship, reinstated for profit.* The traffickers renewed their room every day and paid with the proceeds of Plaintiff's trafficking. FAC ¶¶ 53, 62. They also had "prior commercial dealings" with the hotel "which the trafficker(s) and Defendants wished to reinstate for profit." *Id.* ¶ 64. These facts track *Ricchio v. McLean*, one of the four appellate decisions from which *Mueller* drew its factors. *Mueller*, 185 F.4th at 314 (citing *Ricchio v. McLean*, 853 F.3d 553, 555-57 (1st Cir. 2017)). There, the motel operators "had prior commercial dealings" with the trafficker, "which the parties wished to reinstate for profit." 853 F.3d at 555. The First Circuit found it "inferable that the [operators] understood that in receiving money as rent for the quarters where [the trafficker] was mistreating [the victim], they were associating with him in an effort to force [her] to serve their business objective." *Id.* The daily dealings here satisfy *Mueller*'s

"continuous relationship" factor. FAC ¶¶ 61-64. To be sure, *O.B.J.* found that a continuous relationship of only "ordinary, nondifferentiated hotel services" is not enough after *Mueller*. 2026 U.S. Dist. LEXIS at *17-18. But, *O.B.J.* is unpublished, district court opinion from another district. And, Plaintiff does not rely on the renewals alone. They were paid with trafficking proceeds. They revived prior dealings for profit. And they ran alongside the staff's work as the traffickers' lookouts. Together, these facts support an inference of shared purpose, not an ordinary rental.

*Continuing that business in the face of obvious coercion could never be an arms-length business transaction.* The hotel did all this while its staff watched traffickers abuse and control Plaintiff in common areas and heard her screaming from the room. FAC ¶¶ 66(c)(e)(j)-(k), 67-68. Knowledge alone does not establish participation. *O.B.J.*, 2026 U.S. Dist. LEXIS 227125 at 19-20. But it shows whether a relationship is ordinary. A hotel that rents daily to traffickers it sees abusing and controlling a young woman is not dealing at arm's length. Defendant's argument that such actions are equivalent to an arms-length banking transaction or selling electricity is wrong and heartless. Def. Mem. at 10. Knowingly taking money to provide the venue for a woman to be sex-trafficked is inherently different than providing banking transaction services or electricity. Defendant's staff handed Plaintiff's traffickers the key to a room where she was being repeatedly raped and abuse. *See Molchonova*, 2026 U.S. Dist. LEXIS 236836, at *13-14 (participation plausibly alleged where bank "provided continuous and substantial financial services" despite knowing they "were being used to further Epstein's sex trafficking venture").

### *3. 611 Degraw's counterarguments fail.*

*The lookout allegations are not conclusory.* 611 Degraw calls the lookout allegations "bald." Def. Mem. at 8. It compares them to the allegation in *Mueller* that "some of [the bank's] employees participated in" a fraud scheme. *Id.* at 8-9 (quoting *Mueller*). That comparison fails. The *Mueller* allegation said nothing about what the employees did, for whom, or why. The FAC

does. It names the actors (611 Degraw's staff), the counterparty (the traffickers), the conduct (serving as lookouts and informants), and the object (warning of police activity). It alleges the inducement (payment, compensation, and personal relationships), the period, and that staff acted within the scope of their employment. FAC ¶¶ 35(d), 56, 70(d). That is factual content, not a label. The remaining details, such as the names of employees who acted as lookout are "peculiarly within the possession and control" of 611 Degraw. *Arista Records*, 604 F.3d at 120. It employed the staff and kept the hotel's records. Nor do these allegations resemble those *O.B.J.* found too cursory. There, the complaint said only that staff "would solicit services from" the victims, with no details about the circumstances. 2026 U.S. Dist. LEXIS at *4-5, *20 at n.82.

*The employees' conduct is attributable to 611 Degraw.* 611 Degraw next argues, relying on *Girden v. Sandals International, Ltd.*, 206 F. Supp. 2d 605, 607-608 (S.D.N.Y. 2002), that the lookout conduct was "plainly outside the scope of employment." Def. Mem. at 9. *Girden* held, on a summary judgment record and applying Connecticut vicarious liability law, that a resort was not vicariously liable for a water-sports employee's sexual assault of a guest. *Id.* at 607-08. It says nothing about whether a hotel is charged with what its front-desk, housekeeping, and security staff learn and do while managing the rooms and guests that are the hotel's business in New York. The FAC alleges that the lookouts acted within the scope of their employment. FAC ¶¶ 35(d), 56, 70(d). Under New York law, "because the determination of whether a particular act was within the scope of the servant's employment is so heavily dependent on factual considerations, the question is ordinarily one for the jury." *Riviello v. Waldron*, 47 N.Y.2d 297, 303 (1979). And "knowledge acquired by an agent acting within the scope of its agency is imputed to the principal, even if the information was never actually communicated." *N.Y. Marine & Gen. Ins. Co. v. Tradeline (L.L.C.)*, 266 F.3d 112, 122 (2d Cir. 2001); *accord Apollo Fuel Oil v. United States*, 195 F.3d 74, 76 (2d

Cir. 1999). A corporation acts only through its employees; there is no requirement that "owners or corporate officials" personally direct the conduct. *Contra* Def. Mem. at 9. In any event, 611 Degraw's participation does not rest on the lookout arrangement alone. The hotel itself, as a business, renewed the traffickers' rooms daily and accepted the proceeds of Plaintiff's trafficking as payment. FAC ¶¶ 53, 62-64.

*The FAC does not need to allege that 611 Degraw owned or controlled the trafficking.* 611 Degraw argues that the factors asking whether a defendant "owned an interest in" or "exercised control over" the venture would require it to be a direct perpetrator. Def. Mem. at 7-8. Plaintiff does not allege that 611 Degraw was a perpetrator under § 1591, and she does not need to. FAC ¶ 48. *Mueller*'s factors are considerations "[a]mong" others, and "each case will ultimately turn on its own facts." 185 F.4th at 314. The absence of an equity stake in the trafficking does not defeat a claim that is otherwise supported by a common purpose, specialized services, and a continuous relationship. *See Chang*, 2026 U.S. Dist. LEXIS 187973 at 33 (sustaining claim although "it is not clear whether [the defendant] 'owned an interest in the venture'"). And Defendant did have control over the trafficking with regards to the violations that occurred at the Union Hotel because it had the right to refuse rental of the trafficking venue to the Plaintiff's traffickers. It had the right to force Plaintiff's traffickers to leave at any time, and it had the right to call the police if it suspected criminal activity.

*611 Degraw's remaining authorities are inapposite. Noble v. Weinstein*, 335 F. Supp. 3d 504 (S.D.N.Y. 2018), and *Lawson v. Rubin*, No. 17-cv-6404 (BMC), 2018 U.S. Dist. LEXIS 71582, at *38 (E.D.N.Y. Apr. 29, 2018), do not help 611 Degraw. *Noble* applied the criminal standard of § 1591(a) to a claim pleaded under that section. 335 F. Supp. 3d at 523-24. It did not apply the civil "should have known" standard of § 1595(a). *Lawson* involved a landlord that had

leased a penthouse. 2018 U.S. Dist. LEXIS 71582, at *38-39. The landlord allegedly knew of one police call and one ambulance call in six years, which the court reasoned would not be enough to show constructive knowledge of sex trafficking. *Id.* at *38-40. Neither case involved staff who watched the victim being abused or who warned the traffickers. *Twitter, Inc. v. Taamneh* construed aiding-and-abetting liability under the Justice Against Sponsors of Terrorism Act, 18 U.S.C. § 2333(d)(2). That liability requires "a conscious, voluntary, and culpable participation in another's wrongdoing." 598 U.S. 471, 493 (2023). The Seventh Circuit has held that § 1595(a) does not demand that culpable mental state. *G.G. v. Salesforce.com, Inc.*, 76 F.4th 544, 563-64 (7th Cir. 2023). It still reads participation to require more than "mere passive nonfeasance." *Id.* And *Twitter*'s concern for "mostly passive actors like banks," 598 U.S. at 491, has no application to a hotel whose employees served as traffickers' lookouts. Nor does *A.G. v. Northbrook* help 611 Degraw. It held that renting rooms with knowledge is not enough. But it vacated summary judgment for the hotel operators because staff interactions with the traffickers amounted to "something more." 171 F.4th 1257, 1269, 1271 (11th Cir. 2026). Finally, 611 Degraw cites *K.H. v. Riti, Inc.*, 2024 U.S. App. LEXIS 3127, at *9 (11th Cir. Feb. 9, 2024) for the rule that a motel and trafficker must be "working together to force plaintiff to serve their business objective." Def. Mem. at 8. Yet *O.B.J.* cited that same decision for the proposition that hotel staff serving as police lookouts can establish participation. 2026 U.S. Dist. LEXIS 227125 at 20, n.77.

Taken as a whole, as it must be, the FAC plausibly alleges that 611 Degraw took part in a common undertaking with the traffickers, not merely that it rented them a room.

### ii. The FAC Plausibly Alleges That 611 Degraw Knew or Should Have Known That the Venture Was Trafficking Plaintiff.[3]

611 Degraw argues that the FAC pleads only general awareness of trafficking in the hotel industry, that the red flags it alleges show, at most, prostitution, and that the FAC fails to plead willful blindness. Def. Mem. at 11-15. Each argument misreads the FAC or the statute. Section 1595(a) requires only constructive knowledge, and the FAC alleges that 611 Degraw's own staff observed the force and coercion the traffickers used on Plaintiff at the hotel.

#### *1. Section 1595(a) requires only that 611 Degraw should have known of the venture's violations.*

Section 1595(a) reaches a defendant that benefits from a venture "which that person knew or should have known has engaged in an act in violation of this chapter." 18 U.S.C. § 1595(a). *Mueller* did not decide what this element requires. 185 F.4th at 313. But district courts in this Circuit have long held that the civil standard is constructive knowledge, not the actual knowledge the criminal statute requires. *S.J. v. Choice Hotels Int'l, Inc.*, 473 F. Supp. 3d 147, 153 (E.D.N.Y. 2020) (declining to follow *Noble* because "the civil reading gives full expression to the 'knew or should have known' language"). As Judge Castel explained, courts "have adopted a negligence standard requiring that the defendant hotel 'should have known' of sex trafficking . . . ." *Doe (G.N.C.) v. Uniquest Hosp., LLC*, No. 23-cv-7980 (PKC), 2024 U.S. Dist. LEXIS 163319, * 7 (S.D.N.Y. Sept. 11, 2024), (internal quotes omitted*)*.

---

[3] Defendant incorrectly states that the Eleventh Circuit "uph[e]d dismissal of TVPRA claims as the complaint failed to allege defendant had actual or constructive notice that the 'venture—in which it voluntarily participated and from which it knowingly benefitted- violated the TVPRA as to plaintiff." Def. Mem. at 2. (citing and quoting *Doe v. Red Roof Inns, Inc.*, 21 F.4th 714, 725 (11th Cir. 2021)). But the Eleventh Circuit held that the plaintiff's TVPRA claim failed because they had failed to plausibly allege that the defendants had participated in a venture, and the Eleventh Circuit did not reach the issue of whether the plaintiff had plausibly alleged constructive knowledge. *Red Roof*, 21 F.4th at 726-727.

That disposes of 611 Degraw's willful blindness argument. Def. Mem. at 14-15. Willful blindness "surpasses recklessness and negligence." *Global-Tech Appliances, Inc. v. SEB S.A.*, 563 U.S. 754, 769 (2011). By contrast, "a negligent defendant is one who should have known of a similar risk but, in fact, did not." *Id.* at 770. Section 1595(a) uses exactly that "should have known" language. Plaintiff need not plead that 611 Degraw suspected trafficking and deliberately looked away. She need only plead facts showing that a reasonable hotel operator in its position should have known. The FAC's training allegations are not a willful blindness theory. FAC ¶¶ 32, 34, 36. They explain why staff who saw obvious signs of trafficking did nothing.

#### ***2. 611 Degraw's staff observed signs that Plaintiff was being trafficked by force and coercion.***

The FAC does not rely on general awareness of trafficking in the hotel industry. It alleges what 611 Degraw's employees saw and heard of Plaintiff herself. They saw visible bruising and overt physical deterioration. They saw or heard traffickers physically and verbally abuse her and overtly control her in the hotel's common areas. They heard screaming from her room loud enough to carry outside it. FAC ¶¶ 66(j)-(k), 67. Staff interacted with Plaintiff and saw her, her traffickers, and a steady procession of sex buyers entering and leaving the room. *Id.* ¶¶ 67-69. Staff saw traffickers monitoring the hallway and the door and shadowing Plaintiff. *Id.* ¶¶ 66(e)-(f), 67. Housekeeping saw cash, drugs, and condoms in the room. *Id.* ¶ 66(d). And some employees worked for her traffickers as lookouts against the police. *Id.* ¶ 56. Through its own agents, then, the hotel knew the traffickers were running a business the police would want to stop. Those employees' knowledge, acquired on the job, is imputed to 611 Degraw. *Tradeline*, 266 F.3d at 122.

Allegations like these state a claim against a hotel operator. In *Uniquest*, the court denied the owner-operator's motion. It reasoned that "[a]n allegation that an entity owns operates,

controls, or manages a hotel places the entity or, at least its employees, in a position to closely observe the day-in-day out, night-in-night out goings on at the hotel." 2024 U.S. Dist. LEXIS 163319, at *7. The complaint there alleged that the trafficker "limited her ability to communicate with hotel staff, such that it was obvious and apparent she was being subjected to coercion and control." *Id.* at *8-9. And such red flags "should be considered as a whole and not in isolation . . . ." *Id.* at *7-8. Even the decisions 611 Degraw cites draw the line here. *S.J.* dismissed claims against franchisors with only "an abstract awareness of sex trafficking in general." 473 F. Supp. 3d at 154. The franchisee hotels in *S.J.*, whose staff had "witnessed numerous signs of physical abuse," did not even move to dismiss. *Id.* at 150, n.1. And in *K.O. v. G6 Hospitality, LLC*, the claim proceeded against the operator whose staff the plaintiff had begged for a phone while suffering broken bones. 728 F. Supp. 3d 624, at 634, 654-56 (E.D. Mich. 2024).

***3. 611 Degraw's authorities involve general awareness or the absence of any sign of coercion.***

611 Degraw's cases on "general knowledge" are beside the point. Def. Mem. at 11-12. Most involved franchisors were alleged to know that trafficking occurred somewhere in their brands. Even the phrase "might have been able to guess" comes from *S.J.*'s discussion of franchisors that "were generally aware that sex trafficking sometimes occurred on their franchisees' properties." 473 F. Supp. 3d at 154. The FAC's allegations about trafficking in the hospitality industry are context, not the basis of the claim. FAC ¶¶ 23, 26-33.

611 Degraw's argument that the FAC alleges "prostitution," not trafficking, fares no better. Def. Mem. at 13. That distinction matters only when a complaint alleges commercial sex with no sign of force, fraud, or coercion. That is what was missing in 611 Degraw's cited cases. *See J.L.K.*, 2026 U.S. Dist. LEXIS 193450 at 8 (plaintiff did not allege that the hotel operator "observed

physical abuse, use of threat/force, or any other indicia of trafficking (e.g. signs of coercion)").[4] The FAC alleges exactly those indicia, all within sight or hearing of staff: bruising, physical deterioration, abuse in common areas, overt control by the trafficker, and screaming from the room. FAC ¶ 66(j)-(k). Nor is there any doubt about what "kind of TVPRA violation occurred." Def. Mem. at 14. The traffickers trafficked Plaintiff by threats, abuse, drugs, and withholding her documents. FAC ¶¶ 18, 49. Those are the means of force, fraud, and coercion that § 1591(a) prohibits. One of her traffickers was sentenced to 21 years for doing the same to multiple victims. *Id.* ¶¶ 21-22.

At this stage, Plaintiff need only plead facts from which the Court can reasonably infer that 611 Degraw should have known. She has done so.

**b. THE FAC STATES A CLAIM UNDER NEW YORK SOCIAL SERVICES LAW § 483-bb(c).**

611 Degraw's only argument against Count II is that the FAC fails to plead that it knew or should have known it was profiting from Plaintiff's trafficking. Def. Mem. at 15. That argument fails for the reasons set out in Section V.a.ii above. It also overlooks that § 483-bb(c) is broader than § 1595(a) in a respect that matters here.

Section 483-bb(c) lets a trafficking victim sue "the perpetrator or whoever knowingly advances or profits from, or whoever should have known he or she was advancing or profiting from," the violation. N.Y. Soc. Serv. Law § 483-bb(c)(i). Its language "largely mirrors that of the TVPRA." *A.A. v. Omnicom Grp., Inc.*, 834 F. Supp. 3d 419, 461 (S.D.N.Y. Feb. 24, 2026). But it

[4] As for *Doe (L.M.) v. 42 Hotel Raleigh, LLC*, 717 F. Supp. 3d 464 (E.D.N.C. 2024), on which 611 Degraw relies, Def. Mem. at 12-13, the judgment entered on that decision was later vacated to permit amendment, *id.*, Case No. 5:23-cv-235-FL ECF No. 48 (E.D.N.C. June 11, 2024), and the court then denied even the franchisor's motion to dismiss the amended complaint, explaining that § 1595 "imposes a negligence standard, not a criminal mens rea." *Doe (L.M.) v. 42 Hotel Raleigh, LLC*, No. 5:23-CV-235-FL, ECF No. 61 at 7, 2024 U.S. Dist. LEXIS 165863, at *9, *26 (E.D.N.C. Sept. 16, 2024).

has no "participation in a venture" element. It reaches anyone who profits from trafficking and should have known it. The FAC pleads each piece. Plaintiff was trafficked by force and coercion in violation of NY CLS Penal § 230.34. FAC ¶¶ 18, 49, 78. 611 Degraw profited through room payments made with trafficking proceeds and through Wi-Fi revenue. *Id.* ¶¶ 19, 35(a), 35(c), 50, 53-54, 81. And it should have known, given what its staff saw, heard, and did. *Id.* ¶¶ 35(d), 56, 66-69, 79. Count II is adequately pleaded.[5]

611 Degraw's request that the Court decline supplemental jurisdiction, Def. Mem. at 15-16, depends on dismissal of the TVPRA claim and fails with it. The § 483-bb(c) claim arises from the same trafficking at the same hotel and therefore "derive[s] from a common nucleus of operative fact[]" with the federal claim. *Shahriar v. Smith & Wollensky Rest. Grp., Inc.*, 659 F.3d 234, 245 (2d Cir. 2011). 28 U.S.C. § 1367(c)(3) permits a court to decline jurisdiction after it "has dismissed all claims over which it has original jurisdiction," and even then, the decision is discretionary. *Kolari v. N.Y.-Presbyterian Hosp.*, 455 F.3d 118, 122 (2d Cir. 2006). Because Count I survives, the Court should retain jurisdiction over Count II.

**c. THE FAC GIVES 611 DEGRAW FAIR NOTICE UNDER RULE 8.**

611 Degraw argues that the FAC improperly lumps the defendants together and fails to distinguish between the Union Hotel and the Gowanus Inn and Yard. Def. Mem. at 16-17. But the FAC identifies 611 Degraw, its role, and the hotel it owned and operated, and its collective allegations charge each defendant with the same conduct at their own hotels. That is all Rule 8 requires, as 611 Degraw's element-by-element merits briefing confirms.

[5] Count II invokes the civil remedy in § 483-bb(c). FAC ¶¶ 76-83. The references in FAC ¶¶ 81-82 to subdivisions "(1)(b)" and "(2)" are typographical errors that Plaintiff will correct if the Court grants leave to amend.

"The key to Rule 8(a)'s requirements is whether adequate notice is given." *Wynder v. McMahon*, 360 F.3d 73, 79 (2d Cir. 2004). Rule 8 "does not necessarily require . . . that the complaint separate out claims against individual defendants[.]" *Id.* at 80. Dismissal under Rule 8 "is usually reserved for those cases in which the complaint is so confused, ambiguous, vague, or otherwise unintelligible that its true substance, if any, is well disguised." *Id.* (quoting *Salahuddin v. Cuomo*, 861 F.2d 40, 42 (2d Cir. 1988)). "Nothing in Rule 8 prohibits collectively referring to multiple defendants where the complaint alerts defendants that identical claims are asserted against each defendant." *Ritchie v. N. Leasing Sys., Inc.*, 14 F. Supp. 3d 229, 237 (S.D.N.Y. 2014) (citation omitted); *accord Bais Yaakov of Spring Valley v. Educ. Testing Serv.*, 251 F. Supp. 3d 724, 744-45 (S.D.N.Y. 2017).

The FAC meets that standard. It alleges that 611 Degraw owned and operated the Union Hotel at 611 Degraw Street. FAC ¶ 9. Gowanus owned and operated a separate hotel at 651 Union Street. *Id.* ¶ 11. Greenwich operated and managed both. *Id.* ¶ 10. Plaintiff was trafficked "at the aforesaid hotels, owned and operated by Defendants." *Id.* ¶ 16. Read together, the FAC's allegations about "Defendants" charge each defendant with the same conduct at its own hotel: renting to the traffickers, employing the traffickers' lookouts, and observing the signs of trafficking. *Id.* ¶¶ 35, 56, 62-70. The FAC is not confusing or unintelligible. 611 Degraw understood it well enough to attack it element by element, citing specific paragraphs. Def. Mem. at 5-15. When a complaint asserts the same claims against several defendants, each may test them under Rule 12(b)(6), as 611 Degraw has done. The remedy is not dismissal under Rule 8. *See Wynder*, 360 F.3d at 80. Any gap in how the owner (611 Degraw) and the manager (Greenwich) divided daily operations involves facts peculiarly within their possession. *Arista Records*, 604 F.3d at 120.

611 Degraw's authorities are distinguishable. In *Uniquest*, the complaint lumped Vornado Realty Trust and two of its subsidiaries together as the "Hotel Pennsylvania defendants." 2024 U.S. Dist. LEXIS 163319 at *1, * 13 (S.D.N.Y Sept. 11, 2024). It "ma[de] no attempt to differentiate the roles of any of three defendants in the operations and ownership of the Hotel Pennsylvania." *Id.* The same decision sustained the claim against the defendant whose role as owner-operator was alleged. *Id.* at 7-9, 16-17. The FAC alleges that role for 611 Degraw. FAC ¶ 9. In *Atuahene v. City of Hartford*, the complaint still failed, after two amendments, "to identify which defendants were alleged to be responsible for which alleged violations." 10 F. App'x 33, 34 (2d Cir. 2001). It provided "no factual basis to distinguish their conduct." *Id.* The "lumping" principle 611 Degraw invokes addresses complaints like those. Def. Mem. at 4, 16-17. It does not require a complaint that identifies each defendant's role and hotel to repeat every allegation defendant by defendant. And the out-of-circuit decisions 611 Degraw cites, Def. Mem. at 17, do not displace this Circuit's fair-notice standard. *See Wynder*, 360 F.3d at 79-80.

**d. 611 DEGRAW'S REMAINING ARGUMENTS PROVIDE NO BASIS FOR DISMISSAL.**

611 Degraw asserts that it ceased owning the Union Hotel in November 2023 and that the hotel was later foreclosed and resold. Def. Mem. at 3. Those assertions appear nowhere in the FAC and may not be considered on this motion. *Chambers*, 282 F.3d at 152-53. They are also irrelevant: the trafficking occurred in 2016, when 611 Degraw owned and operated the hotel. FAC ¶¶ 9, 16.

611 Degraw also argues that the TVPRA does not require hotels to affirmatively prevent sex trafficking. Def. Mem. at 18. Plaintiff does not contend otherwise. Her claim rests on the statutory elements: 611 Degraw knowingly benefited from participating in a venture with her traffickers that it knew or should have known was trafficking her. 18 U.S.C. § 1595(a). Liability on those elements is what Congress enacted, and the FAC pleads each of them.

**e. ALTERNATIVELY, PLAINTIFF SHOULD BE GRANTED LEAVE TO AMEND.**

611 Degraw asks for dismissal with prejudice, Def. Mem. at 18, but offers no reason to deny leave to amend. Rule 15(a)(2) directs that "[t]he court should freely give leave when justice so requires," a standard "consistent with our strong preference for resolving disputes on the merits." *Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC*, 797 F.3d 160, 190 (2d Cir. 2015) (citation omitted). "It is the usual practice upon granting a motion to dismiss to allow leave to replead." *Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 48 (2d Cir. 1991). Leave is especially appropriate here. The FAC was filed in July 2025, more than a year before *Mueller* first defined "participation in a venture" in this Circuit. And "[w]ithout the benefit of a ruling, many a plaintiff will not see the necessity of amendment or be in a position to weigh the practicality and possible means of curing specific deficiencies." *Loreley*, 797 F.3d at 190. There has been no undue delay, no bad faith, and no prior ruling on the sufficiency of Plaintiff's allegations.

Amendment would not be futile. If the Court finds any gap, Plaintiff can allege additional facts. Plaintiff would also correct typographical errors in FAC ¶¶ 19, 43, and 81-82.

## VI. CONCLUSION

For these reasons, Plaintiff respectfully requests that the Court deny 611 Degraw's Motion to Dismiss the First Amended Complaint in its entirety. In the alternative, Plaintiff requests leave to file a Second Amended Complaint.

Dated: October 30, 2026

Respectfully submitted,

**ANDREOZZI + FOOTE**

/s/ Nathaniel L. Foote
Nathaniel L. Foote, Esq.
Ashley Ventrillo, Esq. (admitted *pro hac vice*)
4503 North Front Street
Harrisburg, PA 17110
Ph: 717.525.9124 | Fax: 717.525.9143
TeamD@vca.law

*Attorneys for Plaintiff V.J.*

## CERTIFICATE OF COMPLIANCE

Pursuant to Local Civil Rule 7.1(c) of the Local Rules of the United States District Courts for the Southern and Eastern Districts of New York, I certify that this memorandum of law contains 6,739 words, as counted by the word-processing program used to prepare it, excluding the caption, table of contents, table of authorities, signature block, and required certificates, and therefore complies with the 8,750-word limit of Local Civil Rule 7.1(c). This memorandum also complies with the page limit and formatting requirements of Section VI.B of the Individual Practices of the Magistrate Judge Joseph A. Marutollo.

Respectfully submitted,

**ANDREOZZI + FOOTE**

/s/ Nathaniel L. Foote
Nathaniel L. Foote, Esq.
Ashley Ventrillo, Esq. (admitted *pro hac vice*)
4503 North Front Street
Harrisburg, PA 17110
Ph: 717.525.9124 | Fax: 717.525.9143
TeamD@vca.law

*Attorneys for Plaintiff V.J.*

## CERTIFICATE OF SERVICE

I certify that on October 30, 2026, in accordance with Section VI.B of the Individual Practices of the Magistrate Judge Joseph A. Marutollo, I served a true and correct copy of the foregoing Memorandum of Law on all counsel of record by electronic mail. Pursuant to Section VI.B, this memorandum will be filed on ECF by the moving party when the motion is fully briefed.

Respectfully submitted,

**ANDREOZZI + FOOTE**

/s/ Nathaniel L. Foote
Nathaniel L. Foote, Esq.
Ashley Ventrillo, Esq. (admitted *pro hac vice*)
4503 North Front Street
Harrisburg, PA 17110
Ph: 717.525.9124 | Fax: 717.525.9143
TeamD@vca.law

*Attorneys for Plaintiff V.J.*