ANDREOZZI + FOOTE
ATTORNEYS AT LAW

**VIA ECF**

November 20, 2026

The Honorable Joseph A. Marutollo
United States Magistrate Judge
United States District Court for the Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

Re: *V.J. v. 611 Degraw LLC d/b/a Union Hotel, et al.*, No. 1:25-cv-02927-OEM-JAM
Request for Pre-Motion Conference on Anticipated Motion for Leave to File Second Amended Complaint

Dear Judge Marutollo:

We represent Plaintiff V.J. Under Section VI(A)(1-2) of Your Honor's Individual Practices, Plaintiff requests a pre-motion conference on her anticipated motion under Federal Rules of Civil Procedure 15(a)(2) and 16(b)(4) for leave to file a Second Amended Complaint ("SAC"). A conference is required because leave of court is needed to amend, and no party is proceeding pro se. The proposed SAC corrects one mis-typed fact: when Plaintiff was trafficked at Defendants' hotels. It adds no party, no claim, and no legal theory.

On November 3, 2026, Plaintiff's counsel asked counsel for 611 Degraw LLC whether they would consent to the amendment. They responded they would oppose the motion to the extent it renders their Motion to Dismiss ("MTD") moot. If their MTD is denied, they would not oppose. Therefore, Plaintiff respectfully requests Defendants' MTD to remain pending as to the Amended Complaint because the material change in the SAC is the dates Plaintiff was trafficked. Should the Court, in ruling on Defendants' MTD, find that Plaintiff must allege additional facts to plausibly state her claim, Plaintiff respectfully requests leave to amend following the Court's decision.

## A. The First Amended Complaint Misdates The Trafficking By One Year.

The First Amended Complaint, ECF No. 14 ("FAC"), alleges that Plaintiff was trafficked at the subject hotels "in 2016." FAC ¶¶ 16, 78. That date is wrong. Plaintiff's trafficker, Joseph Harris, was indicted in this District for sex trafficking "[i]n or about and between July 2017 and May 2018." *United States v. Harris*, No. 18-cr-616 (LDH) (E.D.N.Y.), ECF No. 1. Harris pleaded guilty to that count on or about January 7, 2022. *Id.*

After reviewing the criminal record, Plaintiff confirmed that she was trafficked at the Union Hotel and the Gowanus Inn and Yard from July 2017 through about December 2017. The

SAC so alleges. SAC ¶¶ 16.

**B. Rule 15(A)(2) Favors Leave To Amend.**

Courts "should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2); *Foman v. Davis,* 371 U.S. 178, 182 (1962). This standard reflects the Second Circuit's "strong preference for resolving disputes on the merits." *Williams v. Citigroup Inc*., 659 F.3d 208, 212–13 (2d Cir. 2011) (per curiam). Leave may be denied only for "futility, bad faith, undue delay, or undue prejudice to the opposing party." *McCarthy v. Dun & Bradstreet Corp*., 482 F.3d 184, 200 (2d Cir. 2007).

None of those grounds applies. The amendment is not futile, because the SAC pleads the same two counts and anchors them to a federal conviction. There is no bad faith, because the amendment conforms the pleading to public court records. There is no prejudice under *Block v. First Blood Assocs*., 988 F.2d 344, 350 (2d Cir. 1993). Discovery is at an early stage, the parties, hotels, and claims are unchanged, and the criminal record is equally available to Defendants.

The claims remain timely. The TVPRA's limitations period runs ten years from when the cause of action arose, 18 U.S.C. § 1595(c)(1), and the corrected dates arise out of the same conduct the FAC pleads. Fed. R. Civ. P. 15(c)(1)(B).

**C. Good Cause Exists Under Rule 16(B)(4).**

To the extent Rule 16(b)(4) applies, "good cause" depends on the diligence of the moving party. *Kassner v. 2nd Ave. Delicatessen Inc*., 496 F.3d 229, 243 (2d Cir. 2007). Plaintiff, a trafficking survivor recalling events from years ago, misdated them by a year. Counsel obtained the criminal case filings, reviewed them with Plaintiff, and now brings this request. For the reasons above, the amendment would not prejudice Defendants. *Id*. at 244.

**D. Conclusion**

Plaintiff requests a pre-motion conference or, alternatively, that the Court grant leave to file the SAC. Plaintiff further respectfully requests Defendants' MTD to remain pending as to the Amended Complaint because the material change in the SAC is the dates Plaintiff was trafficked. Should the Court, in ruling on Defendants' MTD, find that Plaintiff must allege additional facts to plausibly state her claim, Plaintiff respectfully requests leave to amend following the Court's decision. We thank the Court for its consideration.

Respectfully submitted,

*/s/ Ashley Ventrillo*
Ashley Ventrillo, Esq.
(*Pro Hac Vice*)
Nathaniel L. Foote, Esq.
**ANDREOZZI + FOOTE**

4503 N. Front Street
Harrisburg, PA 17110
(717) 525-9124
TeamD@vca.law
nate@vca.law
*Counsel for Plaintiff V.J.*

Enclosures:

Exhibit A: Proposed Second Amended Complaint

Exhibit B: Redlined comparison of the FAC and the proposed SAC

cc: All counsel of record (via ECF)

# EXHIBIT A

## Proposed Second Amended Complaint

**IN THE UNITED STATES DISTRICT COURT FOR
THE EASTERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| V.J.<br>Plaintiff,<br><br>v.<br><br>611 DEGRAW LLC d/b/a UNION HOTEL, GREENWICH STREET EQUITIES LTD. d/b/a UNION HOTEL, d/b/a GOWANUS INN AND YARD and 645-651 UNION INVESTOR, LLC d/b/a GOWANUS INN AND YARD,<br><br>Defendants | :<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>: | CIVIL ACTION<br><br><br>No. 1:25-cv-02927-OEM-JAM<br><br><br><br><br><br><br><br><br>JURY TRIAL DEMANDED |

## SECOND AMENDED COMPLAINT

AND NOW, comes the Plaintiff, by Andreozzi + Foote, who files this Second Amended Complaint against the Defendants 611 Degraw LLC d/b/a Union Hotel, Greenwich Street Equities Ltd. d/b/a Union Hotel, and 645-651 Union Investor, LLC d/b/a Gowanus Inn and Yard, and in support thereof, states as follows:

## INTRODUCTION

1. This action for damages is brought by Plaintiff, a survivor of sex trafficking, under the Federal William Wilberforce Trafficking Victims Protection Reauthorization Act of 2008 ("TVPRA"), 18 U.S.C. § 1595.

2. Sex trafficking is defined under 22 U.S.C. § 7102 (11) as "[t]he recruitment, harboring, transportation, provision, obtaining, patronizing, or soliciting of a person for the purposes of a commercial sex act, in which the commercial sex act is induced by force, fraud, or coercion, or in which the person induced to perform such an act has not attained 18 years of age."

3. Plaintiff meets the definition of a sex trafficking victim, induced by force, fraud, and coercion by a trafficker(s) to engage in commercial sex at the subject hotels, by being psychologically and physically prohibited from escape by a trafficker(s), or alternatively, was a minor at the time of the trafficking.

4. The Trafficking Victims Protections Reauthorization Act ("TVPRA") provides a civil remedy for victims of a violation of the act.

5. Section 1595 of the TVPRA provides that "[a]n individual who is a victim of a violation of this chapter may bring a civil action against the trafficker (or whoever knowingly benefits, financially or by receiving anything of value from participation in a venture which that person knew or should have known has engaged in an act in violation of this chapter) in an appropriate district court of the United States and may recover damages and reasonable attorney's fees." 18 U.S.C. § 1595.

## PARTIES

6. Due to the sensitive, private, and potentially retaliatory nature of the allegations herein, Plaintiff's name and address is not contained herein to protect her safety, privacy and identity. Similarly situated plaintiffs nationwide have proceeded by pseudonym or by their initials due to the foregoing.

7. Plaintiff is currently a resident of New York.

8. Plaintiff was born in 1995.

9. At all times relevant and material, Defendant 611 Degraw LLC d/b/a Union Hotel ("Degraw") was a hotel owner, hotel operator, franchisee, manager, and/or supervisor of a hotel located at 611 Degraw St, Brooklyn, NY 11217. As such, it is responsible for the subject hotel during the period Plaintiff was sex trafficked on said premises.

10. At all times relevant and material, Defendant Greenwich Street Equities Ltd. d/b/a Union Hotel ("Greenwich") was a hotel operator, manager, and/or supervisor of a hotel located at 611 Degraw St, Brooklyn, NY 11217 and at 645-651 Union Street, Brooklyn, NY 11217. As such, it is responsible for the subject hotels during the period Plaintiff was sex trafficked on said premises.

11. At all times relevant and material, Defendant 645-651 Union Investor, LLC d/b/a Gowanus Inn and Yard ("Gowanus") was a hotel owner, hotel operator, franchisee, manager, and/or supervisor of a hotel located at 651 Union St., Brooklyn, NY 11215. As such, it is responsible for the subject hotel during the period Plaintiff was sex trafficked on said premises.

12. During the relevant period, Defendants were the operators of the subject aforesaid premises.

13. Defendants acted as a franchisee and not a franchisor of the subject aforesaid premises.

## JURISDICTION AND VENUE

14. This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331 because this action arises under the Constitution, laws, or treaties of the United States, namely 18 U.S.C. § 1595.

15. Venue is proper in this district pursuant to 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to the Count asserted in this action occurred in the judicial district where this action was brought, and Defendants conducts business within this District pursuant to 28 U.S.C. § 1391(b).

## FACTS

16. As it pertains to the subject Defendants, Plaintiff was sex trafficked at the aforesaid hotels, owned and operated by Defendants, by her traffickers from in or about July 2017 through in or about December 2017.

17. Plaintiff was sex trafficked by Joseph Harris ("Perpetrator").

18. Perpetrator threatened Plaintiff's family, issued verbal threats, and coerced Plaintiff with drugs and alcohol in order to traffic her.

19. Plaintiff was forced to stay in a room at both of Defendants' hotels with several other girls and perform sex acts on the men that came into the room.

20. Many of the other girls in the room were underaged.

21. Perpetrator was ultimately charged with sex trafficking multiple victims by force, fraud, and coercion.

22. In 2023, Perpetrator was sentenced to 21 years for sex trafficking.

PRESS RELEASE

### Brooklyn Man Sentenced to 21 Years for Sex Trafficking

Friday, April 28, 2023

Share

**For Immediate Release**

U.S. Attorney's Office, Eastern District of New York

**Defendant Forced Multiple Victims to Engage in Commercial Sex**

Earlier today, at the federal courthouse in Brooklyn, Joseph Harris, also known as "Luis Santana," and "Joey Moscato," was sentenced by United States District Judge LaShann DeArcy Hall to 21 years in prison for sex trafficking multiple victims by force, fraud, and coercion.

Breon Peace, United States Attorney for the Eastern District of New York, Michael J. Driscoll, Assistant Director-in-Charge, Federal Bureau of Investigation, New York Field Office (FBI), and Keechant L. Sewell, Commissioner, New York City Police Department (NYPD), announced the sentence.

Mr. Peace expressed his appreciation to the Kings County District Attorney's Office for their assistance in the investigation.

From July 2017 until his arrest in May 2018, Harris used violence and threats of violence, along with abusive and coercive tactics, to compel multiple victims to engage in commercial sex acts for his financial benefit. The defendant's crimes were uncovered when NYPD officers responded to several 911 calls about girls being held at his apartment in Brooklyn. Inside the apartment, the officers found two of the defendant's adult victims along with a 16-year-old minor female, and recovered a loaded semi-automatic handgun, a birth certificate for a 17-year-old female, hotel receipts, hand-written instructions written by Harris for posting advertisements for commercial sex, and other items.

23. Sex trafficking occurred at the subject hotels, upon information and belief, prior to Plaintiff's trafficking.

24. Defendants knew or should have known that Plaintiff was a victim of a venture that involved sex trafficking by force, threat of force, fraud, or coercion.

25. As hotel owners and hotel operators, Defendants controlled the training, policies, and decisions on implementation and execution of anti-trafficking policies, protocol, rules and guidelines for its subject property where Plaintiff was sex trafficked.

26. A significant portion of all sex trafficking in the United States of America occurs within the hospitality industry at hotels and motels.

27. The hospitality industry is a major life source of the human trafficking epidemic both in the U.S. and abroad.[1] The United Nations,[2] international non-profits,[3] and the U.S. Department of Homeland Security,[4] have documented this well-known epidemic of human trafficking for years and brought particular attention to the indispensable role of hotels.

28. In 2004, End Child Prostitution and Trafficking ("ECPAT-USA") launched the Tourism Child-Protection Code of Conduct (the "Code") in the United States, identifying the steps companies would need to take to prevent child sex trafficking. ECPAT-USA identified hotel(s)-specific best practices for preventing sex trafficking, such as: (1) not renting by the hour;

---

[1] Giovanna L. C. Cavagnaro, Sex Trafficking: The Hospitality Industry's Role and Responsibility, CORNELL UNIVERSITY SCHOOL OF HOTEL(S) ADMINISTRATION (2017), http://scholarship.sha.cornell.edu/honorstheses/3/.

[2] Global Report on Trafficking in Persons, UNITED NATIONS OFFICE ON DRUGS AND CRIME (2020), available at https://www.unodc.org/documents/data-and-analysis/tip/2021/GLOTiP_2020_15jan_web.pdf. See also We must act together to fight exploitation and human trafficking in tourism, say United Nations and international partners, UNITED NATIONS OFFICE ON DRUGS AND CRIME (April 24, 2012) available at https://www.unodc.org/unodc/en/press/releases/2012/April/we-must-act-together-to-fight-exploitation-and-human-trafficking-in-tourism-say-united-nations-and-international-partners.html.

[3] The Polaris Project and ECPAT-International have published extensive reports and professional toolkits on human trafficking in the hospitality industry for years.

[4] Human Trafficking and the Hospitality Industry, U.S. DEPARTMENT OF HOMELAND SECURITY (2020), available at https://www.dhs.gov/blue-campaign/hospitalityindustry; Hospitality Toolkit, U.S. DEPARTMENT OF HOMELAND SECURITY (2016), available at https://www.dhs.gov/sites/default/files/publications/blue-campaign/toolkits/hospitality-toolkit-eng.pdf.

(2) not permitting cash payments; (3) monitoring online sex ads such as Craigslist and Backpage for its hotel(s) name and pictures of the rooms; (4) changing Wi-Fi passwords in rooms and cafes regularly; (5) watching for a trend of visitors to the same room; (6) being aware of rooms with excess condoms, lubricants, and towels; (7) requiring all visitors to be logged, including guest name, visitor name, arrival time, departure time, and room number.

29. Further, nationwide campaigns have recognized the issue of human trafficking in the hotel industry and the lack of internal policies to address the issue and took initiative as early as 1997 with the United Nations Blue Heart Campaign[5] and domestically in 2010 with the Department of Homeland Security's Blue Campaign.[6]

30. These efforts sought to educate both the public and private sectors on identifying and combatting human trafficking, including the hospitality industry, and both campaigns released free online resources and toolkits publicly accessible to any entity concerned with human trafficking.

31. The passage of the TVPA in 2000 and the passage of the TVPRA in 2008 put the Defendants on notice of the high likelihood of these illegal acts occurring on the subject hotels' premises which, at a minimum, warranted them to be more vigilant and proactive in preventing this conduct.

32. Years before Plaintiff was trafficked, Defendants knew or should have known of the critical role that the hotel industry plays in enabling the sex trade industry and of the widespread national epidemic of hotel(s)/motel sex trafficking.

33. By 2012, training guides and videos were available through the American Hotel(s) Lodging Association (AHLA) and ECPAT-USA and via other resources.

---

[5]The Blue Heart Campaign, UNITED NATIONS (2022), https://www.unodc.org/blueheart/.
[6]DHS Blue Campaign Five Year Milestone, DEP'T OF HOMELAND SECURITY (Jul. 22, 2015), https://www.dhs.gov/blog/2015/07/22/dhs-blue-campaign-five-year-milestone/.

34. Before and during the relevant period, Defendants failed to implement sufficient educational and training programs on sex trafficking within its business chain of command, as well as failed to implement policies for preventing, identifying, reporting, documenting, investigating, and stopping sex trafficking at the subject hotels.

35. Due to the involvement and affirmative actions of Defendants (as owner and operator, and by its staff and employees while acting within the scope of their employment), in associating with, facilitating and enabling the undertaking of the sex trafficking of Plaintiff by her trafficker(s) on Defendants' premises in violation of the TVPRA, including, but not confined to, by:

a. Defendants repeatedly rented rooms to Plaintiff's trafficker(s) when Defendants knew or should have known said trafficker(s) was engaged in sex trafficking on Defendants' premises including as to Plaintiff in violation of the TVPRA;

b. Defendants associating with Plaintiff's trafficker(s) in an effort to force her to serve their business objective;

c. Defendants allowing commercial dealings with the aforesaid trafficker(s) (e.g., in the form of room rentals) to continue on the subject premises and to be reinstated for a profit motive;

d. Defendants' staff and employees acting as lookouts and informants, during the scope of their employment, for the benefit of the trafficker(s) so as to alert the aforesaid trafficker(s) of police activity or similar type warning alerts, or otherwise failing to respond to clear signs of trafficking;

e. Defendants actively advancing the sex trafficking operation of Plaintiff's trafficker(s) by knowingly facilitating and negligently facilitating the venture's activities, i.e., the sex trafficking of Plaintiff; and,

f. Defendants were otherwise being actively involved and affirmatively enabling Plaintiff's trafficker(s) and facilitating the venture's success, Plaintiff was caused to be sex trafficked by her trafficker(s) on Defendants' premises in violation of the TVPRA.

36. Before and during the relevant period, Defendants failed to implement sufficient educational and training programs on sex trafficking within its business chain of command, as well as failed to implement policies for preventing, identifying, reporting, documenting,

investigating, and stopping sex trafficking at the subject hotels.

37. Defendants failed to act upon the obvious and overt signs alerting them to the sex trafficking taking place at this subject hotels including as to Plaintiff herein and in violation of the TVPRA.

38. Had the Defendants timely and properly implemented policies and procedures common and reasonably accepted in the hospitality industry concerning anti-trafficking, safety and security it is more likely than not that the injuries suffered by the Plaintiff at the subject hotels would have been prevented or mitigated.

39. Due to the failure of Defendants to timely and properly implement anti-trafficking policies and practices, Plaintiff was repeatedly victimized and trafficked for sex on Defendants' premises in violation of the TVPRA.

40. Defendants by its passive or active involvement and affirmative enabling of the subject trafficking was a proximate and competent cause and substantial factor in causing Plaintiff severe injuries in this case including, but not limited to, her being the victim of sex trafficking, which has caused Plaintiff severe injury.

41. Because of the foregoing conduct of Defendants, the Plaintiff suffered severe and permanent injuries and damages, as outlined herein.

## CAUSES OF ACTION

### COUNT I
### VIOLATION OF 18 U.S.C. § 1595 ("TVPRA")

42. Plaintiff sets forth an action for violation of 18 U.S.C § 1595 as against the above-captioned Defendants.

43. At all relevant times, Defendants were involved in the staffing and operation of the subject hotels where Plaintiff was trafficked for sex.

44. Plaintiff is a "victim" of sex trafficking as protected under applicable provisions of the TVPRA.

45. As it pertains to this Plaintiff, Plaintiff was sex trafficked at the subject hotels hotel(s) owned and operated by Defendants.

46. Section 1591 of the TVPRA criminalizes sex trafficking of adults by force, fraud or coercion. See 18 U.S.C. § 1591.

47. Separately, § 1595 of the TVPRA provides individuals who are victims of sex trafficking with a civil remedy against the traffickers or the beneficiaries of the sex trafficking. See 18 U.S.C. §1595(a).

48. More specifically, § 1595 provides for three distinct causes of action: (1) a claim against the trafficker(s) who directly violated § 1591(a)(1), a criminal statute; (2) a beneficiary claim against the trafficker(s) who directly violated §1591(a)(2), a criminal statute; and (3) a beneficiary claim against a civil Defendants who did not violate § 1591, but who "knowingly benefit[ed], financially or by receiving anything of value from participation in a venture which that person knew or should have known has engaged in an act in violation of this chapter." 18 U.S.C. § 1595(a); the subject lawsuit is applicable to prong three, i.e. a beneficiary claim against a civil Defendants.

49. In order to induce Plaintiff by force, fraud and coercion to engage in sex with sex buyers at the subject hotels, trafficker(s) used various means to do so including but not limited to (a) trafficker(s) utilizing physical and verbal abuse on and as to Plaintiff and at times in plain sight and earshot of Defendants' staff; (b) trafficker(s) instilled in Plaintiff the fear of severe bodily injury and/or fear of death if trafficker(s)'s directives were not complied with; (c) psychological coercion; (d) withholding Plaintiff's identifying document(s); and (e) other means of force, fraud and coercion used by the trafficker(s) of Plaintiff to induce sex with sex buyers at

the subject hotels.

50. Defendants knowingly benefited from the sex trafficking of Plaintiff at the subject hotels by receiving payment for the room(s) rented by her trafficker(s) (or at the direction of her trafficker(s)) that were used for sex trafficking, including as to the Plaintiff, in violation of the TVPRA.

51. Defendants rented room(s) to individuals it knew or should have known were engaged in the sex trafficking, and of Plaintiff in particular, in violation of the TVPRA.

52. The rental of a hotel(s) room constitutes a financial benefit from a relationship with the trafficker(s) sufficient to meet "financially benefitted" element of the §1595(a) standard.

53. Plaintiff trafficker(s) took proceeds derived from the sex trafficking occurring on the subject premises to continue to pay for room(s) rented at the subject hotels during the time that Plaintiff was being sex trafficked there in violation of the TVPRA.

54. In addition, Defendants received other financial benefit including, but not limited to, from Wi-Fi which, in part, enabled the subject sex trafficking to occur (as Plaintiff was advertised by her trafficker(s) online) and from such Wi-Fi service Defendants, upon information and belief, received financial benefit.

55. Defendants participated in a venture by operating the subject hotels that rented rooms to individuals that Defendants, knew or should have known were involved in sex-trafficking, including as to the Plaintiff herein, in violation of the TVPRA.

56. During the time Plaintiff was trafficked at the subject hotels, Plaintiff's trafficker(s) had direct interaction with employee(s) and staff of Defendants by means of paying, befriending, and/or compensating employee(s) and staff member(s) of said Defendants to act as lookout(s)/informant(s) for Plaintiff's trafficker(s), while acting in their scope of employment, so as to inform the trafficker(s) of police activity or other similar type alerts.

57. In this case, during the relevant period alleged herein, Defendants took part in a common undertaking or enterprise involving risk and potential profit with Plaintiff's trafficker(s) that violated the TVPRA.

58. Operating a hotel(s) and renting out rooms is an enterprise involving risk and potential profit.

59. Defendants operating the subject hotels and renting out rooms to Plaintiff's trafficker(s) was an enterprise involving risk and potential profit.

60. Defendants operating the subject hotels and renting out rooms to Plaintiff's trafficker(s) was an enterprise involving risk and potential profit which violated the TVPRA as to the Plaintiff herein.

61. By renting rooms to Plaintiff's trafficker(s) Defendants, the hotel(s) owner and operator, was associating with Plaintiff's trafficker(s) in an effort to force Plaintiff to serve their business objective.

62. The modus operandi of the trafficker(s) was to renew the room(s) rental daily.

63. A continuous business relationship existed between the subject hotels, its agents, employees and staff, and Plaintiff's trafficker(s), in part, in that the hotel(s) repeatedly rented rooms, and/or repeatedly renewed room rentals, to individual(s) they knew or should have known were involved in sex trafficking on the premises, including as to the Plaintiff.

64. Plaintiff's trafficker(s) had prior commercial dealings with the subject hotels which the trafficker(s) and Defendants wished to reinstate for profit when Plaintiff's trafficker(s) repeatedly rented rooms and/or repeatedly renewed room rentals that were used for trafficking of victims including Plaintiff.

65. These Defendants had constructive and actual knowledge that the undertaking or enterprise violated the TVPRA as to the Plaintiff.

66. Defendants knew or should have known about the nature of the sex trafficking occurring at the subject hotels, including as they related to Plaintiff, a victim, due to the many red flags then and there existing, including but not limited to:

(a) constant foot traffic of sex buyers to the trafficker(s)'s rented room(s) to have sex with trafficked victim(s);

(b) trafficked victim(s) would walk around hotel(s) grounds drug and/or alcohol impaired, sleep deprived, hygiene impaired, behavior impaired, with visible bruising, malnourished, and in sexually explicit clothing;

(c) suspicious individuals loitering outside the hotel(s) room(s) when a sex buyer would enter a room(s);

(d) inside the hotel(s) room(s) rented by the trafficker(s) (or at the direction of the trafficker(s)) there was a suspicious bunch of people and suspicious items including cash, drugs, drug paraphernalia, condoms, lubricants which was observed by housekeeping staff and in plain sight of housekeeping staff;

(e) trafficker(s) monitoring hotel(s) hallway, door of room(s) and walking hotel(s) perimeter;

(f) trafficker(s) shadowing Plaintiff (or having another shadow Plaintiff) in plain sight of hotel(s) staff;

(g) Plaintiff soliciting for sex buyers on the hotel(s) premises at the direction of her trafficker(s),

(h) Plaintiff's room exhibited signs of commercial sex work,

(i) loud noise and yelling emanating from room where sex trafficking of Plaintiff was occurring

(j) trafficker(s) utilizing physical and verbal abuse on and as to Plaintiff and at times in plain sight and earshot of Defendants' staff

(k) overt evidence that Plaintiff was being induced by force, fraud and coercion to have sex with sex buyers on the subject premises [e.g. (1) visible bruising (2) overt physical deterioration of Plaintiff, (3) physical and/or verbal abuse occurring in common areas of the subject hotels in view and/or earshot of staff of Defendants, (4) trafficker(s) overtly asserting control over Plaintiff in common areas of the hotel(s) in view and/or earshot of staff of Defendants (5) intermittent screaming from room(s) where trafficking of Plaintiff occurred sufficiently loud to be heard by staff outside the room and

(l) other commonly known sex trafficking red flags which the above captioned Defendants knew or should have known of had anti-trafficking measures been timely and properly implemented at the hotel(s).

67. Defendants' staff witnessed and observed signs and indicators of sex trafficking including items set forth in the paragraph above.

68. When being trafficked at the subject hotels, Plaintiff interacted with Defendants' staff, and Defendants' staff witnessed and observed Plaintiff, her trafficker, as well as a frequent procession of sex buyers going in and out of the subject rented rooms, contemporaneous with other signs and indicators of trafficking occurring on the subject premises.

69. Plaintiff knows that individuals that witnessed and observed red flags indicative for suspicion for sex trafficking were staff members in that the staff were readily identifiable to Plaintiff either by her knowing of the individual and/or by means of the staff wardrobe/nametag/hotel(s) logo and/or by means of a staff member being in an employee restricted area.

70. Defendants was involved and affirmatively took actions as the hotel(s) owner and operator on Defendants' subject premises during the relevant time period to advance the objective of this undertaking by (a) Defendants repeatedly renting rooms to Plaintiff's trafficker(s) when Defendants knew or should have known said trafficker(s) was engaged in sex trafficking on Defendants' premises including as to Plaintiff in violation of the TVPRA, (b) Defendants associating with Plaintiff's trafficker(s) in an effort to force her to serve their business objective, (c) Defendants allowing commercial dealings with the aforesaid trafficker(s) to continue on the subject premises and to be reinstated for a profit motive, (d) staff and employees of Defendants acting as lookouts and informants, while in the scope of their employment, for the benefit of the trafficker(s) so as to alert the aforesaid trafficker(s) of police activity or similar type warning alerts, (e) Defendants knowingly facilitating and/or negligently facilitating the trafficker(s)'s activities, i.e., the sex trafficking of Plaintiff, and (f) in otherwise being actively involved and affirmatively enabling Plaintiff's trafficker(s) and facilitating their

venture's success.

71. Defendants' failure, by its agents, servants, staff, and employees, to timely and properly prevent the sex trafficking or timely intervene regarding same was a proximate and competent cause and substantial factor in causing Plaintiff's severe injuries in this case including, but not limited to, being the victim of sex trafficking when at this subject hotels and suffering personal injury and the trauma physically and mentally of being induced to engage in commercial sex with multiple sex buyers per day, while being trafficked, and while simultaneously being under fear of severe harm or death if she did not comply as well as all residual injuries.

72. These Defendants, during the relevant time period, could deny accommodation and/or eject a guest for a number of reasons including, but not limited to, (1) guest visibly under the influence of drugs or alcohol, (2) guest creating a nuisance to the public; (3) guest believed to use a hotel(s) room for unlawful purposes, (4) guest uses hotel(s) amenities and premises for unlawful acts, (5) guest brings in extra unregistered guests, (6) guests behavior reasonably disturbs other guests (7) guest violates other rules set by the hotel(s) and (8) for other indicated reasons.

73. Plaintiff being sex trafficked at these subject hotels was a proximate cause, competent cause and substantial factor in causing her severe and permanent injuries including but not limited to personal injuries including the horror of being a victim of sex trafficking as well as significant levels of psychological trauma due to the levels of abuse she was caused to endure during the time she was trafficked.

74. As a direct and proximate result of Defendants' involvement and multiple failures to act, mandate, establish, execute anti-trafficking measures and modify their anti-trafficking efforts at its hotel(s) property, Plaintiff was sex trafficked, sexually exploited, and victimized

repeatedly at Defendants' hotel(s) in violation of the TVPRA.

75. Because of being sex trafficked at the subject hotels, Plaintiff suffered and will continue to suffer substantial economic, physical, mental, emotional, psychiatric, psychological injuries as the result of being trafficked and sexually exploited at the subject hotels in violation of 18 U.S.C. §1591.

**COUNT II**
**VIOLATION OF THE NEW YORK STATE HUMAN TRAFFICKING ACT § 483-BB**

76. Plaintiff incorporates the foregoing paragraphs as though fully set forth herein.

77. At all relevant times, Defendants operated in the hospitality industry and provided lodging and accommodations to the public, including traffickers and their victims.

78. Plaintiff was trafficked for the purposes of sexual and/or labor exploitation at Defendants' hotel from in or about July 2017 through in or about December 2017 under coercion, fraud, and/or force, and without Plaintiff's meaningful consent, in violation of New York Penal Law §§ 135.35, 230.34, or 230.34-a.

79. The trafficking and exploitation of Plaintiff at Defendants' hotels occurred with the actual or constructive knowledge of hotel staff, agents, or management. Signs of trafficking were readily observable and should have prompted immediate intervention or reporting.

80. Despite being in a position to discover, prevent, or report the trafficking of Plaintiff, Defendants failed to take reasonable steps to intervene or notify law enforcement, in direct violation of their legal duties and established industry standards.

81. Defendants knowingly benefited, financially or by receiving something of value, from participation in a venture that it knew or should have known engaged in trafficking, in violation of N.Y. Soc. Serv. Law § 483-bb(1)(b).

82. Plaintiff is entitled to bring a civil action under N.Y. Soc. Serv. Law § 483-bb(2), which authorizes victims of human trafficking to recover compensatory and punitive damages, attorneys' fees, costs, and other appropriate relief against any person or entity that has violated the statute.

83. As a direct and proximate cause of Defendants' actions and omissions, and breach of the duties of reasonable care, Plaintiff was injured, resulting in damages.

## JURY TRIAL DEMAND

Plaintiff hereby demands a trial by jury on all issues so triable.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment against Defendants as identified in the above-referenced Count and as follows:

a) All available compensatory damages for the described losses with respect to the above cause of action;

b) Past and future emotional distress;

c) Consequential and/or special damages;

d) All available noneconomic damages, including without limitation pain, suffering, and loss of enjoyment of life;

e) Disgorgement of profits obtained through unjust enrichment;

f) Restitution;

g) All damages allowable under the TVPRA;

h) All damages allowable under the New York State Human Trafficking Act;

i) Reasonable and recoverable attorney's fees;

j) Punitive damages with respect to each cause of action;

k) Costs of this action; and

l) Pre-judgement and all other interest recoverable

Respectfully submitted,

**ANDREOZZI + FOOTE**

Dated: November 20, 2026

*/s/ Ashley Ventrillo*
Ashley Ventrillo, Esq.
(*Pro Hac Vice*)
Nathaniel Foote, Esq.
TeamD@vca.law
nate@vca.law
4503 N. Front St.
Harrisburg, PA 17110
P: 800.706.2764
F: 717.525.9143
*Attorneys for Plaintiff*

# EXHIBIT B

## Redlined Comparison of the First Amended Complaint (ECF No. 14) and the Proposed Second Amended Complaint

Legend: inserted text; ~~deleted text~~

IN THE UNITED STATES DISTRICT COURT FOR
THE EASTERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| V.J.<br>Plaintiff,<br><br>v.<br><br>611 DEGRAW LLC d/b/a UNION HOTEL, GREENWICH STREET EQUITIES LTD. d/b/a UNION HOTEL, d/b/a GOWANUS INN AND YARD and 645-651 UNION INVESTOR, LLC d/b/a GOWANUS INN AND YARD,<br><br>Defendants | :<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>: | CIVIL ACTION<br><br><br>No. 1:25-cv-02927-OEM-JAM<br><br><br><br><br><br><br><br><br>JURY TRIAL DEMANDED |

**~~FIRST~~SECOND AMENDED COMPLAINT**

AND NOW, comes the Plaintiff, by Andreozzi + Foote, who files this ~~First~~Second Amended Complaint against the Defendants 611 Degraw LLC d/b/a Union Hotel, Greenwich Street Equities Ltd. d/b/a Union Hotel, and 645-651 Union Investor, LLC d/b/a Gowanus Inn and Yard, and in support thereof, states as follows:

**INTRODUCTION**

1. This action for damages is brought by Plaintiff, a survivor of sex trafficking, under the Federal William Wilberforce Trafficking Victims Protection Reauthorization Act of 2008 ("TVPRA"), 18 U.S.C. § 1595.

2. Sex trafficking is defined under 22 U.S.C. § 7102 (11) as "[t]he recruitment, harboring, transportation, provision, obtaining, patronizing, or soliciting of a person for the purposes of a commercial sex act, in which the commercial sex act is induced by force, fraud, or coercion, or in which the person induced to perform such an act has not attained 18 years of age."

3. Plaintiff meets the definition of a sex trafficking victim, induced by force, fraud, and coercion by a trafficker(s) to engage in commercial sex at the subject hotels, by being psychologically and physically prohibited from escape by a trafficker(s), or alternatively, was a minor at the time of the trafficking.

4. The Trafficking Victims Protections Reauthorization Act ("TVPRA") provides a civil remedy for victims of a violation of the act.

5. Section 1595 of the TVPRA provides that "[a]n individual who is a victim of a violation of this chapter may bring a civil action against the trafficker (or whoever knowingly benefits, financially or by receiving anything of value from participation in a venture which that person knew or should have known has engaged in an act in violation of this chapter) in an appropriate district court of the United States and may recover damages and reasonable attorney's fees." 18 U.S.C. § 1595.

## PARTIES

6. Due to the sensitive, private, and potentially retaliatory nature of the allegations herein, Plaintiff's name and address is not contained herein to protect her safety, privacy and identity. Similarly situated plaintiffs nationwide have proceeded by pseudonym or by their initials due to the foregoing.

7. Plaintiff is currently a resident of New York.

8. Plaintiff was born in 1995.

9. At all times relevant and material, Defendant 611 Degraw LLC d/b/a Union Hotel ("Degraw") was a hotel owner, hotel operator, franchisee, manager, and/or supervisor of a hotel located at 611 Degraw St, Brooklyn, NY 11217. As such, it is responsible for the subject hotel during the period Plaintiff was sex trafficked on said premises.

10. At all times relevant and material, Defendant Greenwich Street Equities Ltd. d/b/a Union Hotel ("Greenwich") was a hotel operator, manager, and/or supervisor of a hotel located at 611 Degraw St, Brooklyn, NY 11217 and at 645-651 Union Street, Brooklyn, NY 11217. As such, it is responsible for the subject hotel during the period Plaintiff was sex trafficked on said premises.

11. At all times relevant and material, Defendant 645-651 Union Investor, LLC d/b/a Gowanus Inn and Yard ("Gowanus") was a hotel owner, hotel operator, franchisee, manager, and/or supervisor of a hotel located at 651 Union St., Brooklyn, NY 11215. As such, it is responsible for the subject hotel during the period Plaintiff was sex trafficked on said premises.

12. During the relevant period, Defendants were the operators of the subject aforesaid premises.

13. Defendants acted as a franchisee and not a franchisor of the subject aforesaid premises.

## JURISDICTION AND VENUE

14. This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331 because this action arises under the Constitution, laws, or treaties of the United States, namely 18 U.S.C. § 1595.

15. Venue is proper in this district pursuant to 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to the Count asserted in this action occurred in the judicial district where this action was brought, and Defendants conducts business within this District pursuant to 28 U.S.C. § 1391(b).

## FACTS

16. As it pertains to the subject Defendants, Plaintiff was sex trafficked at the aforesaid hotels, owned and operated by Defendants, by her traffickers ~~in 2016~~from in or about July 2017 through in or about December 2017.

17. Plaintiff was sex trafficked by Joseph Harris ("Perpetrator").

18. Perpetrator threatened Plaintiff's family, issued verbal threats, and coerced Plaintiff with drugs and alcohol in order to traffic her.

19. ~~Perpetrator~~Plaintiff was forced to stay in a room at both of Defendants' hotels with several other girls and perform sex acts on the men that came into the room.

20. Many of the other girls in the room were underaged.

21. Perpetrator was ultimately charged with sex trafficking multiple victims by force, fraud, and coercion.

22. In 2023, Perpetrator was sentenced to 21 years for sex trafficking.

PRESS RELEASE

### Brooklyn Man Sentenced to 21 Years for Sex Trafficking

Friday, April 28, 2023

Share

**For Immediate Release**

U.S. Attorney's Office, Eastern District of New York

**Defendant Forced Multiple Victims to Engage in Commercial Sex**

Earlier today, at the federal courthouse in Brooklyn, Joseph Harris, also known as "Luis Santana," and "Joey Moscato," was sentenced by United States District Judge LaShann DeArcy Hall to 21 years in prison for sex trafficking multiple victims by force, fraud, and coercion.

Breon Peace, United States Attorney for the Eastern District of New York, Michael J. Driscoll, Assistant Director-in-Charge, Federal Bureau of Investigation, New York Field Office (FBI), and Keechant L. Sewell, Commissioner, New York City Police Department (NYPD), announced the sentence.

Mr. Peace expressed his appreciation to the Kings County District Attorney's Office for their assistance in the investigation.

From July 2017 until his arrest in May 2018, Harris used violence and threats of violence, along with abusive and coercive tactics, to compel multiple victims to engage in commercial sex acts for his financial benefit. The defendant's crimes were uncovered when NYPD officers responded to several 911 calls about girls being held at his apartment in Brooklyn. Inside the apartment, the officers found two of the defendant's adult victims along with a 16-year-old minor female, and recovered a loaded semi-automatic handgun, a birth certificate for a 17-year-old female, hotel receipts, hand-written instructions written by Harris for posting advertisements for commercial sex, and other items.

23. Sex trafficking occurred at the subject hotels, upon information and belief, prior to Plaintiff's trafficking.

24. Defendants knew or should have known that Plaintiff was a victim of a venture that involved sex trafficking by force, threat of force, fraud, or coercion.

25. As hotel owners and hotel operators, Defendants controlled the training, policies, and decisions on implementation and execution of anti-trafficking policies, protocol, rules and guidelines for its subject property where Plaintiff was sex trafficked.

26. A significant portion of all sex trafficking in the United States of America occurs within the hospitality industry at hotels and motels.

27. The hospitality industry is a major life source of the human trafficking epidemic both in the U.S. and abroad.[1] The United Nations,[2] international non-profits,[3] and the U.S. Department of Homeland Security,[4] have documented this well-known epidemic of human trafficking for years and brought particular attention to the indispensable role of hotels.

28. In 2004, End Child Prostitution and Trafficking ("ECPAT-USA") launched the Tourism Child-Protection Code of Conduct (the "Code") in the United States, identifying the steps companies would need to take to prevent child sex trafficking. ECPAT-USA identified hotel(s)-specific best practices for preventing sex trafficking, such as: (1) not renting by the hour;

---

[11]Giovanna L. C. Cavagnaro, Sex Trafficking: The Hospitality Industry's Role and Responsibility, CORNELL UNIVERSITY SCHOOL OF HOTEL(S) ADMINISTRATION (2017), http://scholarship.sha.cornell.edu/honorstheses/3/.

[22]Global Report on Trafficking in Persons, UNITED NATIONS OFFICE ON DRUGS AND CRIME (2020), available at https://www.unodc.org/documents/data-and-analysis/tip/2021/GLOTiP_2020_15jan_web.pdf. See also We must act together to fight exploitation and human trafficking in tourism, say United Nations and international partners, UNITED NATIONS OFFICE ON DRUGS AND CRIME (April 24, 2012) available at https://www.unodc.org/unodc/en/press/releases/2012/April/we-must-act-together-to-fight-exploitation-and-human-trafficking-in-tourism-say-united-nations-and-international-partners.html.

[33]The Polaris Project and ECPAT-International have published extensive reports and professional toolkits on human trafficking in the hospitality industry for years.

[44]Human Trafficking and the Hospitality Industry, U.S. DEPARTMENT OF HOMELAND SECURITY (2020), available at https://www.dhs.gov/blue-campaign/hospitalityindustry; Hospitality Toolkit, U.S. DEPARTMENT OF HOMELAND SECURITY (2016), available at https://www.dhs.gov/sites/default/files/publications/blue-campaign/toolkits/hospitality-toolkit-eng.pdf.

(2) not permitting cash payments; (3) monitoring online sex ads such as Craigslist and Backpage for its hotel(s) name and pictures of the rooms; (4) changing Wi-Fi passwords in rooms and cafes regularly; (5) watching for a trend of visitors to the same room; (6) being aware of rooms with excess condoms, lubricants, and towels; (7) requiring all visitors to be logged, including guest name, visitor name, arrival time, departure time, and room number.

29. Further, nationwide campaigns have recognized the issue of human trafficking in the hotel industry and the lack of internal policies to address the issue and took initiative as early as 1997 with the United Nations Blue Heart Campaign[5] and domestically in 2010 with the Department of Homeland Security's Blue Campaign.[6]

30. These efforts sought to educate both the public and private sectors on identifying and combatting human trafficking, including the hospitality industry, and both campaigns released free online resources and toolkits publicly accessible to any entity concerned with human trafficking.

31. The passage of the TVPA in 2000 and the passage of the TVPRA in 2008 put the Defendants on notice of the high likelihood of these illegal acts occurring on the subject hotels' premises which, at a minimum, warranted them to be more vigilant and proactive in preventing this conduct.

32. Years before Plaintiff was trafficked, Defendants knew or should have known of the critical role that the hotel industry plays in enabling the sex trade industry and of the widespread national epidemic of hotel(s)/motel sex trafficking.

33. By 2012, training guides and videos were available through the American Hotel(s) Lodging Association (AHLA) and ECPAT-USA and via other resources.

---

[5][5]The Blue Heart Campaign, UNITED NATIONS (2022), https://www.unodc.org/blueheart/.
[6][6]DHS Blue Campaign Five Year Milestone, DEP'T OF HOMELAND SECURITY (Jul. 22, 2015), https://www.dhs.gov/blog/2015/07/22/dhs-blue-campaign-five-year-milestone/.

34. Before and during the relevant period, Defendants failed to implement sufficient educational and training programs on sex trafficking within its business chain of command, as well as failed to implement policies for preventing, identifying, reporting, documenting, investigating, and stopping sex trafficking at the subject hotels.

35. Due to the involvement and affirmative actions of Defendants (as owner and operator, and by its staff and employees while acting within the scope of their employment), in associating with, facilitating and enabling the undertaking of the sex trafficking of Plaintiff by her trafficker(s) on Defendants' premises in violation of the TVPRA, including, but not confined to, by:

> a. Defendants repeatedly rented rooms to Plaintiff's trafficker(s) when Defendants knew or should have known said trafficker(s) was engaged in sex trafficking on Defendants' premises including as to Plaintiff in violation of the TVPRA;
>
> b. Defendants associating with Plaintiff's trafficker(s) in an effort to force her to serve their business objective;
>
> c. Defendants allowing commercial dealings with the aforesaid trafficker(s) (e.g., in the form of room rentals) to continue on the subject premises and to be reinstated for a profit motive;
>
> d. Defendants' staff and employees acting as lookouts and informants, during the scope of their employment, for the benefit of the trafficker(s) so as to alert the aforesaid trafficker(s) of police activity or similar type warning alerts, or otherwise failing to respond to clear signs of trafficking;
>
> e. Defendants actively advancing the sex trafficking operation of Plaintiff's trafficker(s) by knowingly facilitating and negligently facilitating the venture's activities, i.e., the sex trafficking of Plaintiff; and,
>
> f. Defendants were otherwise being actively involved and affirmatively enabling Plaintiff's trafficker(s) and facilitating the venture's success, Plaintiff was caused to be sex trafficked by her trafficker(s) on Defendants' premises in violation of the TVPRA.

36. Before and during the relevant period, Defendants failed to implement sufficient educational and training programs on sex trafficking within its business chain of command, as well as failed to implement policies for preventing, identifying, reporting, documenting,

investigating, and stopping sex trafficking at the subject hotels.

37. Defendants failed to act upon the obvious and overt signs alerting them to the sex trafficking taking place at this subject hotels including as to Plaintiff herein and in violation of the TVPRA.

38. Had the Defendants timely and properly implemented policies and procedures common and reasonably accepted in the hospitality industry concerning anti-trafficking, safety and security it is more likely than not that the injuries suffered by the Plaintiff at the subject hotels would have been prevented or mitigated.

39. Due to the failure of Defendants to timely and properly implement anti-trafficking policies and practices, Plaintiff was repeatedly victimized and trafficked for sex on Defendants' premises in violation of the TVPRA.

40. Defendants by its passive or active involvement and affirmative enabling of the subject trafficking was a proximate and competent cause and substantial factor in causing ~~P~~ Plaintiff severe injuries in this case including, but not limited to, her being the victim of sex trafficking, which has caused Plaintiff severe injury.

41. Because of the foregoing conduct of Defendants, the Plaintiff suffered severe and permanent injuries and damages, as outlined herein.

## CAUSES OF ACTION

### COUNT I
### VIOLATION OF 18 U.S.C. § 1595 ("TVPRA")

42. Plaintiff sets forth an action for violation of 18 U.S.C § 1595 as against the above-captioned Defendants.

43. At all relevant times, ~~Plaintiff was~~Defendants were involved in the staffing and operation of the subject hotels where Plaintiff was trafficked for sex.

44. Plaintiff is a "victim" of sex trafficking as protected under applicable provisions of the TVPRA.

45. As it pertains to this Plaintiff, Plaintiff was sex trafficked at the subject hotels hotel(s) owned and operated by Defendants.

46. Section 1591 of the TVPRA criminalizes sex trafficking of adults by force, fraud or coercion. See 18 U.S.C. § 1591.

47. Separately, § 1595 of the TVPRA provides individuals who are victims of sex trafficking with a civil remedy against the traffickers or the beneficiaries of the sex trafficking. See 18 U.S.C. §1595(a).

48. More specifically, § 1595 provides for three distinct causes of action: (1) a claim against the trafficker(s) who directly violated § 1591(a)(1), a criminal statute; (2) a beneficiary claim against the trafficker(s) who directly violated §1591(a)(2), a criminal statute; and (3) a beneficiary claim against a civil Defendants who did not violate § 1591, but who "knowingly benefit[ed], financially or by receiving anything of value from participation in a venture which that person knew or should have known has engaged in an act in violation of this chapter." 18 U.S.C. § 1595(a); the subject lawsuit is applicable to prong three, i.e. a beneficiary claim against a civil Defendants.

49. In order to induce Plaintiff by force, fraud and coercion to engage in sex with sex buyers at the subject hotels, trafficker(s) used various means to do so including but not limited to (a) trafficker(s) utilizing physical and verbal abuse on and as to Plaintiff and at times in plain sight and earshot of Defendants' staff; (b) trafficker(s) instilled in Plaintiff the fear of severe bodily injury and/or fear of death if trafficker(s)'s directives were not complied with; (c) psychological coercion; (d) withholding Plaintiff's identifying document(s); and (e) other means of force, fraud and coercion used by the trafficker(s) of Plaintiff to induce sex with sex buyers at

the subject hotels.

50. Defendants knowingly benefited from the sex trafficking of Plaintiff at the subject hotels by receiving payment for the room(s) rented by her trafficker(s) (or at the direction of her trafficker(s)) that were used for sex trafficking, including as to the Plaintiff, in violation of the TVPRA.

51. Defendants rented room(s) to individuals it knew or should have known were engaged in the sex trafficking, and of Plaintiff in particular, in violation of the TVPRA.

52. The rental of a hotel(s) room constitutes a financial benefit from a relationship with the trafficker(s) sufficient to meet "financially benefitted" element of the §1595(a) standard.

53. Plaintiff trafficker(s) took proceeds derived from the sex trafficking occurring on the subject premises to continue to pay for room(s) rented at the subject hotels during the time that Plaintiff was being sex trafficked there in violation of the TVPRA.

54. In addition, Defendants received other financial benefit including, but not limited to, from Wi-Fi which, in part, enabled the subject sex trafficking to occur (as Plaintiff was advertised by her trafficker(s) online) and from such Wi-Fi service Defendants, upon information and belief, received financial benefit.

55. Defendants participated in a venture by operating the subject hotels that rented rooms to individuals that Defendants, knew or should have known were involved in sex-trafficking, including as to the Plaintiff herein, in violation of the TVPRA.

56. During the time Plaintiff was trafficked at the subject hotels, Plaintiff's trafficker(s) had direct interaction with employee(s) and staff of Defendants by means of paying, befriending, and/or compensating employee(s) and staff member(s) of said Defendants to act as lookout(s)/informant(s) for Plaintiff's trafficker(s), while acting in their scope of employment, so as to inform the trafficker(s) of police activity or other similar type alerts.

57. In this case, during the relevant period alleged herein, Defendants took part in a common undertaking or enterprise involving risk and potential profit with Plaintiff's trafficker(s) that violated the TVPRA.

58. Operating a hotel(s) and renting out rooms is an enterprise involving risk and potential profit.

59. Defendants operating the subject hotels and renting out rooms to Plaintiff's trafficker(s) was an enterprise involving risk and potential profit.

60. Defendants operating the subject hotels and renting out rooms to Plaintiff's trafficker(s) was an enterprise involving risk and potential profit which violated the TVPRA as to the Plaintiff herein.

61. By renting rooms to Plaintiff's trafficker(s) Defendants, the hotel(s) owner and operator, was associating with Plaintiff's trafficker(s) in an effort to force Plaintiff to serve their business objective.

62. The modus operandi of the trafficker(s) was to renew the room(s) rental daily.

63. A continuous business relationship existed between the subject hotels, its agents, employees and staff, and Plaintiff's trafficker(s), in part, in that the hotel(s) repeatedly rented rooms, and/or repeatedly renewed room rentals, to individual(s) they knew or should have known were involved in sex trafficking on the premises, including as to the Plaintiff.

64. Plaintiff's trafficker(s) had prior commercial dealings with the subject hotels which the trafficker(s) and Defendants wished to reinstate for profit when Plaintiff's trafficker(s) repeatedly rented rooms and/or repeatedly renewed room rentals that were used for trafficking of victims including Plaintiff.

65. These Defendants had constructive and actual knowledge that the undertaking or enterprise violated the TVPRA as to the Plaintiff.

66. Defendants knew or should have known about the nature of the sex trafficking occurring at the subject hotels, including as they related to Plaintiff, a victim, due to the many red flags then and there existing, including but not limited to:

(a) constant foot traffic of sex buyers to the trafficker(s)'s rented room(s) to have sex with trafficked victim(s);

(b) trafficked victim(s) would walk around hotel(s) grounds drug and/or alcohol impaired, sleep deprived, hygiene impaired, behavior impaired, with visible bruising, malnourished, and in sexually explicit clothing;

(c) suspicious individuals loitering outside the hotel(s) room(s) when a sex buyer would enter a room(s);

(d) inside the hotel(s) room(s) rented by the trafficker(s) (or at the direction of the trafficker(s)) there was a suspicious bunch of people and suspicious items including cash, drugs, drug paraphernalia, condoms, lubricants which was observed by housekeeping staff and in plain sight of housekeeping staff;

(e) trafficker(s) monitoring hotel(s) hallway, door of room(s) and walking hotel(s) perimeter;

(f) trafficker(s) shadowing Plaintiff (or having another shadow Plaintiff) in plain sight of hotel(s) staff;

(g) Plaintiff soliciting for sex buyers on the hotel(s) premises at the direction of her trafficker(s),

(h) Plaintiff's room exhibited signs of commercial sex work,

(i) loud noise and yelling emanating from room where sex trafficking of Plaintiff was occurring

(j) trafficker(s) utilizing physical and verbal abuse on and as to Plaintiff and at times in plain sight and earshot of Defendants' staff

(k) overt evidence that Plaintiff was being induced by force, fraud and coercion to have sex with sex buyers on the subject premises [e.g. (1) visible bruising (2) overt physical deterioration of Plaintiff, (3) physical and/or verbal abuse occurring in common areas of the subject hotels in view and/or earshot of staff of Defendants, (4) trafficker(s) overtly asserting control over Plaintiff in common areas of the hotel(s) in view and/or earshot of staff of Defendants (5) intermittent screaming from room(s) where trafficking of Plaintiff occurred sufficiently loud to be heard by staff outside the room and

(l) other commonly known sex trafficking red flags which the above captioned Defendants knew or should have known of had anti-trafficking measures been timely and properly implemented at the hotel(s).

67. Defendants' staff witnessed and observed signs and indicators of sex trafficking including items set forth in the paragraph above.

68. When being trafficked at the subject hotels, Plaintiff interacted with Defendants' staff, and Defendants' staff witnessed and observed Plaintiff, her trafficker, as well as a frequent procession of sex buyers going in and out of the subject rented rooms, contemporaneous with other signs and indicators of trafficking occurring on the subject premises.

69. Plaintiff knows that individuals that witnessed and observed red flags indicative for suspicion for sex trafficking were staff members in that the staff were readily identifiable to Plaintiff either by her knowing of the individual and/or by means of the staff wardrobe/nametag/hotel(s) logo and/or by means of a staff member being in an employee restricted area.

70. Defendants was involved and affirmatively took actions as the hotel(s) owner and operator on Defendants' subject premises during the relevant time period to advance the objective of this undertaking by (a) Defendants repeatedly renting rooms to Plaintiff's trafficker(s) when Defendants knew or should have known said trafficker(s) was engaged in sex trafficking on Defendants' premises including as to Plaintiff in violation of the TVPRA, (b) Defendants associating with Plaintiff's trafficker(s) in an effort to force her to serve their business objective, (c) Defendants allowing commercial dealings with the aforesaid trafficker(s) to continue on the subject premises and to be reinstated for a profit motive, (d) staff and employees of Defendants acting as lookouts and informants, while in the scope of their employment, for the benefit of the trafficker(s) so as to alert the aforesaid trafficker(s) of police activity or similar type warning alerts, (e) Defendants knowingly facilitating and/or negligently facilitating the trafficker(s)'s activities, i.e., the sex trafficking of Plaintiff, and (f) in otherwise being actively involved and affirmatively enabling Plaintiff's trafficker(s) and facilitating their

venture's success.

71. Defendants' failure, by its agents, servants, staff, and employees, to timely and properly prevent the sex trafficking or timely intervene regarding same was a proximate and competent cause and substantial factor in causing Plaintiff's severe injuries in this case including, but not limited to, being the victim of sex trafficking when at this subject hotels and suffering personal injury and the trauma physically and mentally of being induced to engage in commercial sex with multiple sex buyers per day, while being trafficked, and while simultaneously being under fear of severe harm or death if she did not comply as well as all residual injuries.

72. These Defendants, during the relevant time period, could deny accommodation and/or eject a guest for a number of reasons including, but not limited to, (1) guest visibly under the influence of drugs or alcohol, (2) guest creating a nuisance to the public; (3) guest believed to use a hotel(s) room for unlawful purposes, (4) guest uses hotel(s) amenities and premises for unlawful acts, (5) guest brings in extra unregistered guests, (6) guests behavior reasonably disturbs other guests (7) guest violates other rules set by the hotel(s) and (8) for other indicated reasons.

73. Plaintiff being sex trafficked at these subject hotels was a proximate cause, competent cause and substantial factor in causing her severe and permanent injuries including but not limited to personal injuries including the horror of being a victim of sex trafficking as well as significant levels of psychological trauma due to the levels of abuse she was caused to endure during the time she was trafficked.

74. As a direct and proximate result of Defendants' involvement and multiple failures to act, mandate, establish, execute anti-trafficking measures and modify their anti-trafficking efforts at its hotel(s) property, Plaintiff was sex trafficked, sexually exploited, and victimized

repeatedly at Defendants' hotel(s) in violation of the TVPRA.

75. Because of being sex trafficked at the subject hotels, Plaintiff suffered and will continue to suffer substantial economic, physical, mental, emotional, psychiatric, psychological injuries as the result of being trafficked and sexually exploited at the subject hotels in violation of 18 U.S.C. §1591.

**COUNT II**
**VIOLATION OF THE NEW YORK STATE HUMAN TRAFFICKING ACT § 483-BB**

76. Plaintiff incorporates the foregoing paragraphs as though fully set forth herein.

77. At all relevant times, Defendants operated in the hospitality industry and provided lodging and accommodations to the public, including traffickers and their victims.

78. Plaintiff was trafficked for the purposes of sexual and/or labor exploitation at Defendants' hotel ~~in 2016~~from in or about July 2017 through in or about December 2017 under coercion, fraud, and/or force, and without Plaintiff's meaningful consent, in violation of New York Penal Law §§ 135.35, 230.34, or 230.34-a.

79. The trafficking and exploitation of Plaintiff at Defendants' hotels occurred with the actual or constructive knowledge of hotel staff, agents, or management. Signs of trafficking were readily observable and should have prompted immediate intervention or reporting.

80. Despite being in a position to discover, prevent, or report the trafficking of Plaintiff, Defendants failed to take reasonable steps to intervene or notify law enforcement, in direct violation of their legal duties and established industry standards.

81. Defendants knowingly benefited, financially or by receiving something of value, from participation in a venture that it knew or should have known engaged in trafficking, in violation of N.Y. Soc. Serv. Law § 483-bb(1)(b).

82. Plaintiff is entitled to bring a civil action under N.Y. Soc. Serv. Law § 483-bb(2), which authorizes victims of human trafficking to recover compensatory and punitive damages, attorneys' fees, costs, and other appropriate relief against any person or entity that has violated the statute.

83. As a direct and proximate cause of Defendants' actions and omissions, and breach of the duties of reasonable care, Plaintiff was injured, resulting in damages.

## JURY TRIAL DEMAND

Plaintiff hereby demands a trial by jury on all issues so triable.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment against Defendants as identified in the above-referenced Count and as follows:

a) All available compensatory damages for the described losses with respect to the above cause of action;

b) Past and future emotional distress;

c) Consequential and/or special damages;

d) All available noneconomic damages, including without limitation pain, suffering, and loss of enjoyment of life;

e) Disgorgement of profits obtained through unjust enrichment;

f) Restitution;

g) All damages allowable under the TVPRA;

h) All damages allowable under the New York State Human Trafficking Act;

i) Reasonable and recoverable attorney's fees;

j) Punitive damages with respect to each cause of action;

k) Costs of this action; and

l) Pre-judgement and all other interest recoverable

Respectfully submitted,

**ANDREOZZI + FOOTE**

Dated: ~~July 18, 2025~~November 20, 2026

*/s/ Ashley Ventrillo*
Ashley Ventrillo, Esq.
(*Pro Hac Vice*)
Nathaniel Foote, Esq.
TeamD@vca.law
nate@vca.law
4503 N. Front St.
Harrisburg, PA 17110
P: 800.706.2764
F: 717.525.9143
*Attorneys for Plaintiff*