**IN THE UNITED STATES DISTRICT COURT FOR**
**THE EASTERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| V.J.<br>Plaintiff,<br><br>v.<br><br>611 DEGRAW LLC d/b/a UNION HOTEL, GREENWICH STREET EQUITIES LTD. d/b/a UNION HOTEL, d/b/a GOWANUS INN AND YARD and 645-651 UNION INVESTOR, LLC d/b/a GOWANUS INN AND YARD,<br><br>Defendants | : | CIVIL ACTION<br><br>No. 1:25-cv-02927-OEM-JAM<br><br>JURY TRIAL DEMANDED |

## SECOND AMENDED COMPLAINT

AND NOW, comes the Plaintiff V.J., who files this Second Amended Complaint against the Defendants 611 Degraw LLC d/b/a Union Hotel, Greenwich Street Equities Ltd. d/b/a Union Hotel, and 645-651 Union Investor, LLC d/b/a Gowanus Inn and Yard, and in support thereof, states as follows:

## INTRODUCTION

1. This action for damages is brought by Plaintiff, a survivor of sex trafficking, under the Federal William Wilberforce Trafficking Victims Protection Reauthorization Act of 2008 ("TVPRA"), 18 U.S.C. § 1595.

2. Sex trafficking is defined under 22 U.S.C. § 7102 (11) as "[t]he recruitment, harboring, transportation, provision, obtaining, patronizing, or soliciting of a person for the purposes of a commercial sex act, in which the commercial sex act is induced by force, fraud, or coercion, or in which the person induced to perform such an act has not attained 18 years of age."

3. Plaintiff meets the definition of a sex trafficking victim, induced by force, fraud, and coercion by a trafficker(s) to engage in commercial sex at the subject hotels, by being psychologically and physically prohibited from escape by a trafficker(s), or alternatively, was a minor at the time of the trafficking.

4. The Trafficking Victims Protections Reauthorization Act ("TVPRA") provides a civil remedy for victims of a violation of the act.

5. Section 1595 of the TVPRA provides that "[a]n individual who is a victim of a violation of this chapter may bring a civil action against the trafficker (or whoever knowingly benefits, financially or by receiving anything of value from participation in a venture which that person knew or should have known has engaged in an act in violation of this chapter) in an appropriate district court of the United States and may recover damages and reasonable attorney's fees." 18 U.S.C. § 1595.

## **PARTIES**

6. Due to the sensitive, private, and potentially retaliatory nature of the allegations herein, Plaintiff's name and address is not contained herein to protect her safety, privacy and identity. Similarly situated plaintiffs nationwide have proceeded by pseudonym or by their initials due to the foregoing.

7. Plaintiff is currently a resident of New York.

8. Plaintiff was born in 1995.

9. At all times relevant and material, Defendant 611 Degraw LLC d/b/a Union Hotel ("Degraw") was a hotel owner, hotel operator, franchisee, manager, and/or supervisor of a hotel located at 611 Degraw St, Brooklyn, NY 11217. As such, it is responsible for the subject hotel during the period Plaintiff was sex trafficked on said premises.

10. At all times relevant and material, Defendant Greenwich Street Equities Ltd. d/b/a Union Hotel ("Greenwich") was a hotel operator, manager, and/or supervisor of a hotel located at 611 Degraw St, Brooklyn, NY 11217 and at 645-651 Union Street, Brooklyn, NY 11217. As such, it is responsible for the subject hotels during the period Plaintiff was sex trafficked on said premises.

11. At all times relevant and material, Defendant 645-651 Union Investor, LLC d/b/a Gowanus Inn and Yard ("Gowanus") was a hotel owner, hotel operator, franchisee, manager, and/or supervisor of a hotel located at 651 Union St., Brooklyn, NY 11215. As such, it is responsible for the subject hotel during the period Plaintiff was sex trafficked on said premises.

12. During the relevant period, Defendants were the operators of the subject aforesaid premises.

13. Defendants acted as a franchisee and not a franchisor of the subject aforesaid premises.

## JURISDICTION AND VENUE

14. This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331 because this action arises under the Constitution, laws, or treaties of the United States, namely 18 U.S.C. § 1595.

15. Venue is proper in this district pursuant to 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to the Count asserted in this action occurred in the judicial district where this action was brought, and Defendants conducts business within this District pursuant to 28 U.S.C. § 1391(b).

## FACTS

16. As it pertains to the subject Defendants, Plaintiff was sex trafficked at the aforesaid hotels, owned and operated by Defendants, by her traffickers from in or about July 2017 through in or about December 2017.

17. Plaintiff was sex trafficked by Joseph Harris ("Perpetrator"), his associates, and the individuals who purchased commercial sex.

18. Perpetrator threatened Plaintiff's family, issued verbal threats, and coerced Plaintiff with drugs and alcohol in order to traffic her.

19. Plaintiff was forced to stay in a room at both of Defendants' hotels with several other girls and perform sex acts on the men that came into the room.

20. Many of the other girls in the room were underaged.

21. Perpetrator was ultimately charged with sex trafficking multiple victims by force, fraud, and coercion.

22. In 2023, Perpetrator was sentenced to 21 years for sex trafficking.

PRESS RELEASE

# Brooklyn Man Sentenced to 21 Years for Sex Trafficking

Friday, April 28, 2023

Share

For Immediate Release

U.S. Attorney's Office, Eastern District of New York

## Defendant Forced Multiple Victims to Engage in Commercial Sex

Earlier today, at the federal courthouse in Brooklyn, Joseph Harris, also known as "Luis Santana," and "Joey Moscato," was sentenced by United States District Judge LaShann DeArcy Hall to 21 years in prison for sex trafficking multiple victims by force, fraud, and coercion.

Breon Peace, United States Attorney for the Eastern District of New York, Michael J. Driscoll, Assistant Director-in-Charge, Federal Bureau of Investigation, New York Field Office (FBI), and Keechant L. Sewell, Commissioner, New York City Police Department (NYPD), announced the sentence.

Mr. Peace expressed his appreciation to the Kings County District Attorney's Office for their assistance in the investigation.

From July 2017 until his arrest in May 2018, Harris used violence and threats of violence, along with abusive and coercive tactics, to compel multiple victims to engage in commercial sex acts for his financial benefit. The defendant's crimes were uncovered when NYPD officers responded to several 911 calls about girls being held at his apartment in Brooklyn. Inside the apartment, the officers found two of the defendant's adult victims along with a 16-year-old minor female, and recovered a loaded semi-automatic handgun, a birth certificate for a 17-year-old female, hotel receipts, hand-written instructions written by Harris for posting advertisements for commercial sex, and other items.

22A. A federal grand jury in this District charged Perpetrator with sex trafficking by force, fraud, and coercion "[i]n or about and between July 2017 and May 2018." *United States v. Harris*, No. 18-cr-616 (LDH) (E.D.N.Y.), ECF No. 1 ¶ 1.

22B. On or about January 7, 2022, Perpetrator pleaded guilty to Count One of that Indictment, which charged a violation of 18 U.S.C. §§ 1591(a)(1) and 1591(b)(1). *Id.*, ECF No. 106-1 at 1.

22C. Plaintiff is the victim identified in the criminal case as "Adult Female 1" and, at sentencing, as "Jane Doe 1."

22D. In a sworn search-warrant affidavit filed in the criminal case, law enforcement recounted Plaintiff's statement that, between July 2017 and December 2017, Perpetrator arranged for her to engage in commercial sex, and that between July 2017 and September 2017 she worked for Perpetrator and lived at two hotels in Brooklyn. *Id.*, ECF No. 45-1, Ex. G ¶ 8 (Page ID 225).

22E. The Union Hotel, located at 611 DeGraw Street, Brooklyn, New York, and the Gowanus Inn and Yard, located at 645–651 Union Street, Brooklyn, New York (collectively, the "Subject Hotels"), are the hotels at which Plaintiff was trafficked.

22F. Plaintiff was sex trafficked at the Union Hotel, 611 Degraw Street, beginning on or about July of 2017. Plaintiff, the Perpetrator, or his associates typically booked a room at the Union Hotel for one or two nights and then repeatedly extended the stay, often for periods of one to two weeks at a time. At times, two rooms were booked at the Union Hotel at the same time.

22G. Plaintiff was trafficked out of the Union Hotel, 611 Degraw Street for approximately six (6) months. Plaintiff, the Perpetrator, and his associates stayed at the Gowanus Inn and Yard, 645-651 Union Street, around the corner on occasion, but they consistently returned to the Union Hotel.

22H. Plaintiff's last extended stay at the Union Hotel ended on or about December 3, 2017. Plaintiff returned to the Union Hotel one final time in or around mid-December 2017.

22I. The Perpetrator and his associates used alcohol to coerce her compliance by supplying alcohol to Plaintiff and requiring her to drink before encounters with buyers. The Perpetrator was also manipulative and forced her into compliance with the threat of a gun that he kept on his person at all times. The Perpetrator also kept her compliant by stealing her personal documents, like her identification. Once he had her identification, he would threaten to go to her mother's house and kill her children. If Plaintiff ever disobeyed or fought back, the Perpetrator would purposefully book her with buyers he knew to be rougher and more violent, who would force her to perform rougher and more degrading sexual acts, as punishment.

22J. A front desk employee at the Union Hotel, was working when the Perpetrator tried to enter the hotel. Hotel staff told the Perpetrator and Plaintiff that the Perpetrator was banned from the property.

22K. Hotel staff said the Perpetrator had been banned because of prior stays at the hotel with other young women, during which the rooms were damaged.

22L. The hotel therefore knew of the Perpetrator, and of his pattern of bringing multiple young women to the property, before and during Plaintiff's stay.

22M. Despite the purported ban, the Perpetrator kept entering the hotel and moved freely about the property during Plaintiff's stay. Hotel staff did not remove the Perpetrator, refuse the rooms associated with him, or report him to law enforcement.

22N. Rooms at the Union Hotel were registered under Plaintiff's name or the names of the Perpetrator's associates, including a man known as "Mazzy."

22O. Plaintiff turned over all of her earnings from commercial sex to the Perpetrator or his associates. They gave her back only the amount needed to pay for the room. Plaintiff or one of the Perpetrator's associates paid for the room extensions in cash at the front desk.

22P. Once the room was booked, hotel staff did not ask for identification again, whether Plaintiff or one of the Perpetrator's associates came to the front desk to extend the stay. Staff grew so familiar with their faces that they extended the room for whichever of them came to the front desk to renew the room, without regard to who that person was.

22Q. At times the Perpetrator paid for the rooms online, using prepaid cards that he loaded at check cashing stores or pharmacies with Plaintiff's proceeds.

23. Sex trafficking occurred at the subject hotels, upon information and belief, prior to Plaintiff's trafficking.

24. Defendants knew or should have known that Plaintiff was a victim of a venture that involved sex trafficking by force, threat of force, fraud, or coercion.

25. As hotel owners and hotel operators, Defendants controlled the training, policies, and decisions on implementation and execution of anti-trafficking policies, protocol, rules and

guidelines for its subject property where Plaintiff was sex trafficked.

26. A significant portion of all sex trafficking in the United States of America occurs within the hospitality industry at hotels and motels.

27. The hospitality industry is a major life source of the human trafficking epidemic both in the U.S. and abroad.[1] The United Nations,[2] international non-profits,[3] and the U.S. Department of Homeland Security,[4] have documented this well-known epidemic of human trafficking for years and brought particular attention to the indispensable role of hotels.

28. In 2004, End Child Prostitution and Trafficking ("ECPAT-USA") launched the Tourism Child-Protection Code of Conduct (the "Code") in the United States, identifying the steps companies would need to take to prevent child sex trafficking. ECPAT-USA identified hotel-specific best practices for preventing sex trafficking, such as: (1) not renting by the hour; (2) not permitting cash payments; (3) monitoring online sex ads such as Craigslist and Backpage for its hotel's name and pictures of the rooms; (4) changing Wi-Fi passwords in rooms and cafes regularly; (5) watching for a trend of visitors to the same room; (6) being aware of rooms with excess condoms, lubricants, and towels; (7) requiring all visitors to be logged, including guest name, visitor name, arrival time, departure time, and room number.

---

[1] Giovanna L. C. Cavagnaro, Sex Trafficking: The Hospitality Industry's Role and Responsibility, CORNELL UNIVERSITY SCHOOL OF HOTEL(S) ADMINISTRATION (2017), http://scholarship.sha.cornell.edu/honorstheses/3/.

[2] Global Report on Trafficking in Persons, UNITED NATIONS OFFICE ON DRUGS AND CRIME (2020), available at https://www.unodc.org/documents/data-and-analysis/tip/2021/GLOTiP_2020_15jan_web.pdf. See also We must act together to fight exploitation and human trafficking in tourism, say United Nations and international partners, UNITED NATIONS OFFICE ON DRUGS AND CRIME (April 24, 2012) available at https://www.unodc.org/unodc/en/press/releases/2012/April/we-must-act-together-to-fight-exploitation-and-human-trafficking-in-tourism-say-united-nations-and-international-partners.html.

[3] The Polaris Project and ECPAT-International have published extensive reports and professional toolkits on human trafficking in the hospitality industry for years.

[4] Human Trafficking and the Hospitality Industry, U.S. DEPARTMENT OF HOMELAND SECURITY (2020), available at https://www.dhs.gov/blue-campaign/hospitalityindustry; Hospitality Toolkit, U.S. DEPARTMENT OF HOMELAND SECURITY (2016), available at https://www.dhs.gov/sites/default/files/publications/blue-campaign/toolkits/hospitality-toolkit-eng.pdf.

29. Further, nationwide campaigns have recognized the issue of human trafficking in the hotel industry and the lack of internal policies to address the issue and took initiative as early as 1997 with the United Nations Blue Heart Campaign[5] and domestically in 2010 with the Department of Homeland Security's Blue Campaign.[6]

30. These efforts sought to educate both the public and private sectors on identifying and combatting human trafficking, including the hospitality industry, and both campaigns released free online resources and toolkits publicly accessible to any entity concerned with human trafficking.

31. The passage of the TVPA in 2000 and the passage of the TVPRA in 2008 put the Defendants on notice of the high likelihood of these illegal acts occurring on the subject hotels' premises which, at a minimum, warranted them to be more vigilant and proactive in preventing this conduct.

32. Years before Plaintiff was trafficked, Defendants knew or should have known of the critical role that the hotel industry plays in enabling the sex trade industry and of the widespread national epidemic of hotel/motel sex trafficking.

33. By 2012, training guides and videos were available through the American Hotels Lodging Association (AHLA) and ECPAT-USA and via other resources.

34. Before and during the relevant period, Defendants failed to implement sufficient educational and training programs on sex trafficking within its business chain of command, as well as failed to implement policies for preventing, identifying, reporting, documenting, investigating, and stopping sex trafficking at the subject hotels.

---

[5] The Blue Heart Campaign, UNITED NATIONS (2022), https://www.unodc.org/blueheart/.

[6] DHS Blue Campaign Five Year Milestone, DEP'T OF HOMELAND SECURITY (Jul. 22, 2015), https://www.dhs.gov/blog/2015/07/22/dhs-blue-campaign-five-year-milestone/.

35. Due to the involvement and affirmative actions of Defendants (as owner and operator, and by its staff and employees while acting within the scope of their employment), in associating with, facilitating and enabling the undertaking of the sex trafficking of Plaintiff by the Perpetrator and his associates on Defendants' premises in violation of the TVPRA, including, but not confined to, by:

> a. Defendants repeatedly rented rooms to Plaintiff's, her Perpetrator, and his associates when Defendants knew or should have known said Perpetrator and associates were engaged in sex trafficking on Defendants' premises including as to Plaintiff in violation of the TVPRA;
>
> b. Defendants associating with Plaintiff's Perpetrator and his associates in an effort to force her to serve their business objective;
>
> c. Defendants allowing commercial dealings with the aforesaid Perpetrator and his associates (e.g., in the form of room rentals) to continue on the subject premises and to be reinstated for a profit motive;
>
> d. Upon information and belief, Defendants' staff and employees acting as lookouts and informants, during the scope of their employment, for the benefit of the Perpetrator and his associates so as to alert the aforesaid Perpetrator and his associates of police activity or similar type warning alerts, or otherwise failing to respond to clear signs of trafficking;
>
> e. Defendants actively advancing the sex trafficking operation of Plaintiff's Perpetrator by knowingly facilitating and negligently facilitating the venture's activities, i.e., the sex trafficking of Plaintiff; and,
>
> f. Defendants were otherwise being actively involved and affirmatively enabling Plaintiff's Perpetrator and facilitating the venture's success, Plaintiff was caused to be sex trafficked by the Perpetrator and his associates on Defendants' premises in violation of the TVPRA.

36. Before and during the relevant period, Defendants failed to implement sufficient educational and training programs on sex trafficking within its business chain of command, as well as failed to implement policies for preventing, identifying, reporting, documenting, investigating, and stopping sex trafficking at the subject hotels.

37. Defendants failed to act upon the obvious and overt signs alerting them to the sex trafficking taking place at the subject hotels including as to Plaintiff herein and in violation of the TVPRA.

38. Had the Defendants timely and properly implemented policies and procedures common and reasonably accepted in the hospitality industry concerning anti-trafficking and safety and security, it is more likely than not that the injuries suffered by the Plaintiff at the subject hotels would have been prevented or mitigated.

39. Due to the failure of Defendants to timely and properly implement anti-trafficking policies and practices, Plaintiff was repeatedly victimized and trafficked for sex on Defendants' premises in violation of the TVPRA.

40. Defendants by their passive or active involvement and affirmative enabling of the subject trafficking were a proximate and competent cause and substantial factor in causing Plaintiff severe injuries in this case including, but not limited to, her being the victim of sex trafficking.

41. Because of the foregoing conduct of Defendants, the Plaintiff suffered severe and permanent injuries and damages, as outlined herein.

## CAUSES OF ACTION

### COUNT I
### VIOLATION OF 18 U.S.C. § 1595 ("TVPRA")

42. Plaintiff sets forth an action for violation of 18 U.S.C § 1595 as against the above-captioned Defendants.

43. At all relevant times, Defendants were involved in the staffing and operation of the subject hotels where Plaintiff was trafficked for sex.

44. Plaintiff is a "victim" of sex trafficking as protected under applicable provisions of the TVPRA.

45. As it pertains to this Plaintiff, Plaintiff was sex trafficked at the subject hotels owned and operated by Defendants.

46. Section 1591 of the TVPRA criminalizes sex trafficking of adults by force, fraud or coercion. *See* 18 U.S.C. § 1591.

47. Separately, § 1595 of the TVPRA provides individuals who are victims of sex trafficking with a civil remedy against the traffickers or the beneficiaries of the sex trafficking. *See* 18 U.S.C. §1595(a).

48. More specifically, § 1595 provides for three distinct causes of action: (1) a claim against the traffickers who directly violated § 1591(a)(1), a criminal statute; (2) a beneficiary claim against the traffickers who directly violated §1591(a)(2), a criminal statute; and (3) a beneficiary claim against a civil Defendants who did not violate § 1591, but who "knowingly benefit[ed], financially or by receiving anything of value from participation in a venture which that person knew or should have known has engaged in an act in violation of this chapter." 18 U.S.C. § 1595(a); the subject lawsuit is applicable to prong three, *i.e.* a beneficiary claim against a civil Defendants.

49. In order to induce Plaintiff by force, fraud and coercion to engage in sex with sex buyers at the subject hotels, the Perpetrator and his associates used various means to do so including but not limited to (a) physical and verbal abuse on and as to Plaintiff and at times in plain sight and earshot of Defendants' staff; (b) instilling in Plaintiff the fear of severe bodily injury and/or fear of death if Perpetrator's directives were not complied with; (c) psychological coercion; (d) withholding Plaintiff's identifying documents; and (e) other means of force, fraud and coercion used by the Perpetrator and his associates to induce sex with sex buyers at the subject hotels.

50. Defendants knowingly benefited from the sex trafficking of Plaintiff at the subject hotels by receiving payment for the rooms rented by her Perpetrator(or at the direction of her Perpetrator) that were used for sex trafficking, including as to the Plaintiff, in violation of the

TVPRA.

51. Defendants rented rooms to individuals it knew or should have known were engaged in the sex trafficking, and of Plaintiff in particular, in violation of the TVPRA.

52. The rental of a hotel's room constitutes a financial benefit from a relationship with the Perpetrator and his associates sufficient to meet the "financially benefitted" element of the §1595(a) standard.

53. The Perpetrator and his associates took proceeds derived from the sex trafficking occurring on the subject premises to continue to pay for rooms rented at the subject hotels during the time that Plaintiff was being sex trafficked there in violation of the TVPRA.

54. In addition, Defendants received other financial benefit including, but not limited to, from Wi-Fi which, in part, enabled the subject sex trafficking to occur (as Plaintiff was advertised by her Perpetrator online) and from such Wi-Fi service Defendants, upon information and belief, received financial benefit.

55. Defendants participated in a venture by operating the subject hotels that rented rooms to individuals that Defendants, knew or should have known were involved in sex-trafficking, including as to the Plaintiff herein, in violation of the TVPRA.

56. Upon information and belief, during the time Plaintiff was trafficked at the subject hotels, the Perpetrator and his associates had direct interaction with employees and staff of Defendants by means of paying, befriending, and/or compensating employees and staff members of said Defendants to act as lookouts/informants for the Perpetrator and his associates, while acting in their scope of employment, so as to inform them of police activity or other similar type alerts.

57. In this case, during the relevant period alleged herein, Defendants took part in a common undertaking or enterprise involving risk and potential profit with the Perpetrator and his

associates that violated the TVPRA.

58. Operating a hotel and renting out rooms is an enterprise involving risk and potential profit.

59. Defendants operating the subject hotels and renting out rooms to the Perpetrator and his associates was an enterprise involving risk and potential profit.

60. Defendants operating the subject hotels and renting out rooms to the Perpetrator and his associates was an enterprise involving risk and potential profit which violated the TVPRA as to the Plaintiff herein.

61. By renting rooms to the Perpetrator and his associates, Defendants, the hotels' owners and operators, were associating with the Perpetrator and his associates in an effort to force Plaintiff to serve their business objective.

62. The modus operandi of the Perpetrator and his associates was to renew the rooms rental daily.

63. A continuous business relationship existed between the subject hotels, their agents, employees and staff, and the Perpetrator and his associates, in part, in that the hotels repeatedly rented rooms, and/or repeatedly renewed room rentals, to individuals they knew or should have known were involved in sex trafficking on the premises, including as to the Plaintiff.

64. The Perpetrator and his associates had prior commercial dealings with the subject hotels which the Perpetrator, his associates, and Defendants wished to reinstate for profit when the Perpetrator and his associates repeatedly rented rooms and/or repeatedly renewed room rentals that were used for trafficking of victims, including Plaintiff.

65. These Defendants had constructive and actual knowledge that the undertaking or enterprise violated the TVPRA as to the Plaintiff.

66. Defendants knew or should have known about the nature of the sex trafficking occurring at the subject hotels, including as they related to Plaintiff, a victim, due to the many red flags then and there existing, including but not limited to:

(a) constant foot traffic of sex buyers to the Perpetrator and his associates rented rooms to have sex with trafficked victims;

(b) trafficked victims would walk around hotels' grounds drug and/or alcohol impaired, sleep deprived, hygiene impaired, behavior impaired, with visible bruising, malnourished, and in sexually explicit clothing;

(c) suspicious individuals loitering outside the hotels' rooms when a sex buyer would enter a room;

(d) upon information and belief, inside the hotels' rooms rented by the Perpetrator (or at the direction of the Perpetrator) there was a suspicious bunch of people and suspicious items including cash, drugs, drug paraphernalia, condoms, lubricants which was observed by housekeeping staff and in plain sight of housekeeping staff;

(e) upon information and belief, Perpetrator and his associates monitoring hotels' hallway, door of rooms and walking hotels' perimeter;

(f) Perpetrator shadowing Plaintiff (or having another shadow Plaintiff) in plain sight of hotels' staff;

(g) Plaintiff soliciting for sex buyers on the hotels' premises at the direction of her traffickers,

(h) Plaintiff's room exhibited signs of commercial sex work,

(i) loud noise and yelling emanating from room where sex trafficking of Plaintiff was occurring

(j) upon information and belief, Perpetrator and his associates utilizing physical and verbal abuse on and as to Plaintiff and at times in plain sight and earshot of Defendants' staff; and

(k) upon information and belief, overt evidence that Plaintiff was being induced by force, fraud and coercion to have sex with sex buyers on the subject premises [e.g. (1) visible bruising (2) overt physical deterioration of Plaintiff, (3) physical and/or verbal abuse occurring in common areas of the subject hotels in view and/or earshot of staff of Defendants, (4) Perpetrator and his associates overtly asserting control over Plaintiff in common areas of the hotels in view and/or earshot of staff of Defendants (5) intermittent screaming from rooms where trafficking of Plaintiff occurred sufficiently loud to be heard by staff outside the room and

67. Defendants' staff witnessed and observed signs and indicators of sex trafficking including items set forth in the paragraph above.

68. When being trafficked at the subject hotels, Plaintiff interacted with Defendants' staff, and Defendants' staff witnessed and observed Plaintiff, the Perpetrator and his associates, other sex-trafficking victims who were with Plaintiff, including a minor victim, as well as a frequent procession of sex buyers going in and out of the subject rented rooms, contemporaneous with other signs and indicators of trafficking occurring on the subject premises.

69. Plaintiff knows that individuals that witnessed and observed red flags indicative for suspicion for sex trafficking were staff members in that the staff were readily identifiable to Plaintiff either by her knowing of the individual and/or by means of the staff wardrobe/nametag/hotels logo and/or by means of a staff member being in an employee restricted area.

70. Defendants were involved and affirmatively took actions as the hotels' owners and operators on Defendants' subject premises during the relevant time period to advance the objective of this undertaking by (a) Defendants repeatedly renting rooms to Plaintiff, her Perpetrator, and his associates when Defendants knew or should have known said Perpetrator was engaged in sex trafficking on Defendants' premises including as to Plaintiff in violation of the TVPRA, (b) Defendants associating with the Perpetrator and his associates in an effort to force her to serve their business objective, (c) Defendants allowing commercial dealings with the aforesaid Perpetrator to continue on the subject premises and to be reinstated for a profit motive, (d) upon information and belief, staff and employees of Defendants acting as lookouts and informants, while in the scope of their employment, for the benefit of the Perpetrator and his associates so as to alert the aforesaid Perpetrator and his associates of police activity or similar type warning alerts, (e) Defendants knowingly facilitating and/or negligently facilitating the

Perpetrator's activities, *i.e.*, the sex trafficking of Plaintiff, and (f) in otherwise being actively involved and affirmatively enabling Plaintiff's Perpetrator and facilitating their venture's success.

71. Defendants' failure, by its agents, servants, staff, and employees, to timely and properly prevent the sex trafficking or timely intervene regarding same was a proximate and competent cause and substantial factor in causing Plaintiff's severe injuries in this case including, but not limited to, being the victim of sex trafficking when at this subject hotels and suffering personal injury and the trauma physically and mentally of being induced to engage in commercial sex with multiple sex buyers per day, while being trafficked, and while simultaneously being under fear of severe harm or death if she did not comply as well as all residual injuries.

72. Defendants, during the relevant time period, could deny accommodation and/or eject a guest for a number of reasons including, but not limited to, (1) guest visibly under the influence of drugs or alcohol, (2) guest creating a nuisance to the public; (3) guest believed to use a hotel room for unlawful purposes, (4) guest uses hotel amenities and premises for unlawful acts, (5) guest brings in extra unregistered guests, (6) guests behavior reasonably disturbs other guests, and (7) guest violates other rules set by the hotel

73. Plaintiff being sex trafficked at these subject hotels was a proximate cause, competent cause and substantial factor in causing her severe and permanent injuries including but not limited to personal injuries including the horror of being a victim of sex trafficking as well as significant levels of psychological trauma due to the levels of abuse she was caused to endure during the time she was trafficked.

74. As a direct and proximate result of Defendants' involvement and multiple failures to act, mandate, establish, execute anti-trafficking measures and modify their anti-trafficking

efforts at their hotel properties, Plaintiff was sex trafficked, sexually exploited, and victimized repeatedly at Defendants' hotels in violation of the TVPRA.

75. Because of being sex trafficked at the subject hotels, Plaintiff suffered and will continue to suffer substantial economic, physical, mental, emotional, psychiatric, psychological injuries as the result of being trafficked and sexually exploited at the subject hotels in violation of 18 U.S.C. §1591.

## COUNT II
## VIOLATION OF THE NEW YORK STATE HUMAN TRAFFICKING ACT § 483-BB

76. At all relevant times, Defendants operated in the hospitality industry and provided lodging and accommodations to the public, including traffickers and their victims.

77. Plaintiff was trafficked for the purposes of sexual and labor exploitation at Defendants' hotels from in or about July 2017 through in or about December 2017 under coercion, fraud, and/or force, and without Plaintiff's meaningful consent, in violation of New York Penal Law §§ 135.35, 230.34, or 230.34-a.

78. The trafficking and exploitation of Plaintiff at Defendants' hotels occurred with the actual or constructive knowledge of hotel staff, agents, or management. Signs of trafficking were readily observable and should have prompted immediate intervention or reporting.

79. Despite being in a position to discover, prevent, or report the trafficking of Plaintiff, Defendants failed to take reasonable steps to intervene or notify law enforcement, in direct violation of their legal duties and established industry standards.

80. Defendants knowingly benefited, financially or by receiving something of value, from participation in a venture that it knew or should have known engaged in trafficking, in violation of N.Y. Soc. Serv. Law § 483-bb(1)(b).

81. Plaintiff is entitled to bring a civil action under N.Y. Soc. Serv. Law § 483-bb(2), which authorizes victims of human trafficking to recover compensatory and punitive damages, attorneys' fees, costs, and other appropriate relief against any person or entity that has violated the statute.

82. As a direct and proximate cause of Defendants' actions and omissions, and breach of the duties of reasonable care, Plaintiff was injured, resulting in damages.

## JURY TRIAL DEMAND

Plaintiff hereby demands a trial by jury on all issues so triable.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment against Defendants as identified in the above-referenced Count and as follows:

a) All available compensatory damages for the described losses with respect to the above cause of action;

b) Past and future emotional distress;

c) Consequential and/or special damages;

d) All available noneconomic damages, including without limitation pain, suffering, and loss of enjoyment of life;

e) Disgorgement of profits obtained through unjust enrichment;

f) Restitution;

g) All damages allowable under the TVPRA;

h) All damages allowable under the New York State Human Trafficking Act;

i) Reasonable and recoverable attorney's fees;

j) Punitive damages with respect to each cause of action;

k) Costs of this action; and

l) Pre-judgement and all other interest recoverable

Respectfully submitted,

**ANDREOZZI + FOOTE**

Dated: November 23, 2026

*/s/ Ashley Ventrillo*
Ashley Ventrillo, Esq.
(*Pro Hac Vice*)
Nathaniel Foote, Esq.
TeamD@vca.law
nate@vca.law
4503 N. Front St.
Harrisburg, PA 17110
P: 800.706.2764
F: 717.525.9143
*Attorneys for Plaintiff*